141 So.2d 85 (1962)
MACK TRUCKS, INC.
v.
Richard C. MAGEE.
No. 5488.
Court of Appeal of Louisiana, First Circuit.
April 23, 1962.
*86 Reed, Reed, Reed & Garvey, by John A. Salvaggio, New Orleans, for appellant.
William C. Bradley, Baton Rouge, for appellee.
Before LOTTINGER, LANDRY and REID, JJ.
REID, Judge.
This appeal is taken from a single judgment rendered dismissing plaintiff's demands in three cases by the same name consolidated for trial. In each case plaintiff sought to obtain a deficiency judgment for the balance alleged to be due on a promissory note secured by a chattel mortgage affecting a truck sold by the plaintiff, Mack Trucks, Inc., to the defendant, Richard C. Magee.
The original indebtedness arising from the sale of the trucks was shown by introduction of the act of sale with chattel mortgage and the promissory note in each case. The defendant admitted his signature on the notes; but specially pleaded discharge of the indebtedness by a dation en paiement in each case of the mortgaged property.
Also in evidence in each case is the writ and Sheriff's proces verbal in the executory proceedings showing the seizure and sale of the mortgaged property with benefit of appraisement, and the return of said writs unsatisfied.
Defendant bases his pleas of payment upon the circumstances under which the trucks were returned to the plaintiff. It was his testimony that he voluntarily returned one truck to New Orleans by agreement with certain employees of the plaintiff. He testified that two of the trucks were located in Culman, Alabama, when Mr. Frank Russo, plaintiff's sales representative told him that he had a man interested in buying them and would like to show them to the prospective purchaser. Mr. Magee then brought the trucks back to Franklinton, where he voluntarily delivered *87 them to Mr. Russo and two colored boys.
LSA-C.C. Art. 2655 defines a dation en paiement.
"Art. 2655. The giving in payment is an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due." (Emphasis supplied.)
The dation en paiement is similar to "accord and satisfaction." 1 C.J.S. Accord and Satisfaction § 20b, p. 488.
With the distinction only that in the case of a dation en paiement title of the property does not pass until delivery, this contract is subject to all the rules which govern ordinary contracts of sale. LSA-C.C. Arts. 2657-2659.
Like a sale it requires consent of the parties.[1] In the case of movable a verbal dation may be made, provided its testimonial proof is made in accordance with the rules provided in the title: Of Conventional Obligations. LSA-C.C. Art. 2441.
LSA-C.C. Art. 2277 appearing in the section of that title entitled "Of Testimonial Proof" provides as follows:
"Art. 2277. All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances."
Although it has been held that this article does not apply where it is sought to establish a defense to a claim and not to prove a claim, it has likewise been held that the policy established by this codal article requires a careful scrutiny of the testimony. Goldsmith v. Parsons, La.App., 161 So. 879.
The burden of proving that a promissory note secured by a chattel mortgage was paid by return of the mortgaged property is on the debtor. Gulf States Finance Corp. v. Moses, La.App., 56 So.2d 221. See also LSA-C.C. Art. 2232.
The burden of proving the defense of payment of a promissory note is on the defendant. Finance Security Co. v. Reid, 15 La.App. 667, 132 So. 765; Commercial & Savings Bank v. Quality Shop, La.App., 141 So. 498; St. Charles Dairy, Inc. v. Hayes, 233 La. 217, 96 So.2d 494; In re Pan American Life Ins. Co., La.App., 88 So.2d 410.
The only evidence in support of defendant's plea is his own testimony, and this testimony is so equivocal, self-contradictory and indefinite that it can hardly be considered proof.
With regard to the circumstances surrounding the delivery of the first truck, defendant testified as follows:
"A: It was an agreement between Mr. Dible, Frank Russo and Mr. Caron and myself.

*88 "Q: Did they say anything to you which would indicate that if there was any unpaid balance remaining on the truck that you would be obligated to pay same?
"A: They didn't make a definite statement of that but I was lead to believe that."
Assuming that Mr. Magee intended to answer the question in the negative rather than in the affirmative (which would entirely contradict his claim), his answer proves that there was no definite agreement to give or receive the property as a dation en paiement which would discharge the debt. He was lead to believe it although no definite statement was made in that regard. He does not amplify so as to explain what the plaintiff's employees said or did that lead him to this conclusion.
With regard to the delivery of the other two trucks, he testified as follows:
"Q: Did he say anything when talking to you which might lead you to believe that there would be no further legal action in this matter?
"A: Yes, he did.
"Q: Will you explain to the Court what was said?
"A: He told me he was pretty sure this man in Kenner was interested in buying them and they don't usually sue a man for returning the truck because they get enough down payment, usually the value of the truck when it is traded back in.
"Q: Would you have returned that truck had you known you would not be released?
"A: I don't think I would.
"Q: Did they make any mention to you that they might proceed to seize the trucks through court action and have them sold?
"A: They were trying to help me I thought. I thought they were trying to help get me out from under the deal like that.
"Q: You voluntarily returned these trucks to them?
"A: Right.
"Q: And they accepted the trucks?
"A: That is right. Mr. Frank Russo came got them, two of them.
"Q: At the time he picked up the trucks did he make any mention of you being given any credit on them at that time and billed at a later date?
"A: I don't recall that.
"Q: At the time you gave him the trucks you thought you were clear of the trucks, of your obligation on them?
"A: Right.
"Q: Would you have released them if you had thought otherwise?
"A: No."
Upon being specifically interrogated on cross-examination concerning a specific agreement, he testified as follows:
"Q: Let me put it this way, Mr. Magee, When Mr. Russo came to Franklinton and bought those two trucks, did he tell you in so many words that if you returned these trucks to Mack Truck, Inc., that you would be completely released from any obligation on those trucks?
"A: He lead me to believe that. I don't remember exactly what the conversation was.
"Q: It seems to me that the crux of the problem here is did he or didn't he tell you that you would be released?
"A: He didn't give me any release. If he had I would have signed one."
Although Mr. Russo did not tell him that the debt would be discharged or that he had authority from Mack Trucks, Inc., *89 to receive the trucks in satisfaction of the debt, Mr. Magee felt that he was led to believe that the debt would be discharged. Mr. Magee was particularly uncertain of the status of the debt in the event that the plaintiff could not find a purchaser for the trucks.
Certainly if there had been any mutual intention to effect a dation en paiement and consequent discharge of the debt, the possibility of finding a purchaser for the trucks would have been of no concern to the defendant. Mr. Russo had apparently represented to Mr. Magee that he would try to sell the trucks for his account. Mr. Magee virtually admitted this fact on cross-examination.
"Q: Isn't it a fact that really what went on between you and Mr. Russo was that he was going to try to help you out from under these obligations by trying to sell these trucks for you?
"A: I imagine so. * * *"
Mr. Magee was apparently a man of substantial business experience. Yet he has failed to explain the very unusual circumstances that upon delivery of the trucks in payment of his indebtedness, he did not request the return of the promissory notes which together represented a sum of approximately $40,000.00 and although he received additional notices of non-payment he was not stirred or impelled to seek the return of the cancelled notes.
Other circumstances in the case likewise indicate that there was no intention on the part of either party to treat the return of the trucks as a discharge of the debt. In order to effect a dation en paiement, title to the property must pass to the creditor-donee. But in the present case no effort was made by either party to formally transfer title of the trucks to the plaintiff by execution of the assignment on the reverse of the certificates of title by the transferor. The fact that the mortgagee was in possession of the certificates according to law did not dispense the parties of the necessity of transferring the motor vehicles in accordance with the provisions of the motor vehicle registration law, and it is inconceivable that the plaintiff, a corporation dealing in motor vehicles, would accept the transfer of a motor vehicle with the intention of acquiring legal title and ownership thereof without requiring the execution of the assignment on the certificate of title.
These unexplained circumstances raise strong inferences that the debt was not in fact discharged and that there was no intention by the parties to effect a dation en paiement. Defendant's uncorroborated and equivocal testimony certainly did not overcome these inferences or discharge the burden of proof.
Counsel for defendant criticizes severely the manner in which the trucks were obtained and then seized and sold. He points out that the executory proceedings took place in a parish other than defendant's domicile, and that the plaintiff availed itself of the confession of judgment and the waivers of notice of seizure and demand for payment contained in the chattel mortgages and promissory notes.
We feel that the trial judge in his written reasons for judgment was swayed by the equity in the matter and by the fact that the trucks were returned voluntarily by the defendant who was under the impression that they would be sold for enough to pay off the indebtedness. We admit that there were strong equities in favor of the defendant and under our present law as set out in Art. 2721, LSA-C.C.P., notice of seizure in the plaintiff's foreclosure suit in Orleans Parish would have to have been served on the defendant. This provision in the new law cannot be waived. However, the new Code of Civil Procedure was not in effect at the time these foreclosure suits were originally filed.
It may be conceded that there can be no claim for a deficiency judgment when a creditor takes advantage of a waiver of *90 appraisement. LSA-R.S. 13:4106. However, no authority has been pointed out, and none has been found, which holds that the same result obtains when a creditor takes advantage of the waiver of notice of seizure and the waiver of demand for payment. The law itself provides that a confession of judgment operates as a waiver of citation.
Nevertheless the circumstances under which the trucks were seized and sold under executory process without benefit of appraisement are of no concern in this case. The pleadings are devoid of any attack thereon. Any question of estoppel is not only unsubstantiated by definite evidence of misrepresentations and reliance thereon, but it could not be considered in view of the fact that it also is not specially pleaded.
The sole plea made by the defendant is a plea of payment by dation en paiement.
Defendant's counsel and the trial court were impressed by the failure of the plaintiff to produce Mr. Russo as a witness. It was shown that Mr. Russo had terminated his employment a year previously but was still available for summons. However, it was not incumbent on the plaintiff to disprove payment. Defendant had the right to call Mr. Russo or any other person who was employed by the plaintiff at the time of the transaction for purposes of cross-examination. Nothing can be inferred from the failure of either party to call Mr. Russo. The trial court suggests that Mr. Russo's whereabouts were probably known only to the plaintiff. Even if there were anything in the record to substantiate this conclusionand there is notthe defendant could easily have obtained the information by availing himself of discovery procedures.
For these reasons the judgment of the District Court is reversed and judgment rendered in each of the three suits as follows, to-wit:
In Suit No. 20036 on the docket of the 22nd Judicial District Court it is ordered, adjudged and decreed judgment in favor of the plaintiff, Mack Trucks, Inc., against the defendant, Richard C. Magee, d/b/a Magee Creamery in the amount of $7738.75 with interest at the rate of 8% per annum thereon from and after June 1st, 1959 until paid, plus 25% attorney's fees on the total sum of $11,072.75 with 8% per annum interest thereon from and after June 1st, 1959 until paid, and all costs of said suit.
In Suit No. 20037 on the docket of the 22nd Judicial District Court it is ordered, adjudged and decreed judgment in favor of plaintiff, Mack Trucks, Inc., and against defendant, Richard C. Magee d/b/a Magee Creamery in the principal sum of $8860.24 with interest at the rate of 8% per annum thereon, from and after April 5th, 1959 until paid, plus 25% attorney's fees on the total sum of $12,194.24 with 8% per annum interest thereon from and after April 5, 1959 until paid and all costs of said suit.
In Suit No. 20038 on the docket of the 22nd Judicial District Court it is ordered, adjudged and decreed that Mack Trucks, Inc., have a recovery judgment in its favor and against the defendant, Richard C. Magee, d/b/a Magee Creamery in the principal sum of $32.00 with interest at the rate of 8% per annum thereon from and after May 15, 1959 until paid, plus 25% attorney's fees on the total of $3366.00 with 8% per annum interest thereon from and after May 15th, 1959 until paid, and all costs of said suit.
It is further ordered that costs of this appeal be borne by the appellee.
Reversed and rendered.
NOTES
[1] With regard to the intention of the creditor the following statement in Planiol, Treatise on the Civil Law, Vol. 2, Part 1, No. 522, p. 291 is pertinent:

"There is a giving in payment when the debtor remits in payment to his creditor a thing other than that which was due by virtue of the obligation. For example he owes money, he discharges his obligation by delivering merchandise or by transferring to the creditor the ownership of an immovable. This mode of payment cannot be employed except with the consent of the creditor, who always has the right to exact what is due him."
Therefore it was not only necessary for the defendant to prove a debt, a delivery of the thing, and an intention on his part to make a dation en paiement, but he also had the burden of proving that the plaintiff consented to a discharge or extinguishment of the debt.