243 So.2d 88 (1970)
FRUEHAUF TRAILER DIVISION, FRUEHAUF CORP.
v.
Lloyd P. TOUPS.
No. 8151.
Court of Appeal of Louisiana, First Circuit.
December 21, 1970.
Rehearing Denied February 5, 1971.
*89 Edward T. Diaz, of Diaz & Herrin, Golden Meadow, for appellant.
Henry Leon Sarpy, of Chaffe, McCall, Phillips, Burke, Toler & Sarpy, New Orleans, and Jack Wise, of Caillouet & Wise, Thibodaux, for appellee.
Before LANDRY, ELLIS and BLANCHE, JJ.
LANDRY, Judge.
Defendant Toups takes this appeal from the judgment of the trial court in favor of plaintiff, Fruehauf Trailer Division, Fruehauf Corporation (Fruehauf), in the sum of $6,815.93, together with interest and attorney's fees due under a note and chattel mortgage executed by appellant as security for 8 Trailmobile trailers purchased from plaintiff. In addition, the judgment below recognized plaintiff's vendor's lien and privilege upon the mortgaged trailers and maintained the writ of sequestration issued pursuant thereto. We find no error in the judgment of the trial court and affirm same.
Appellant concedes his making a cash down payment of $1,465.20 on the purchase price of $7,326.00, leaving a balance of $5,860.80, to which was added miscellaneous fees of $15.00 and interest of $940.13, a total of $6,815.93, the amount stipulated in the note and chattel mortgage. The note, dated December 31, 1965, is payable in one installment of $283.93, due February 10, 1969, and 23 additional installments of $284.00 due on the 10th of each month thereafter. An acceleration clause provides that failure to pay any one installment when due matures the remaining installments, at the holder's option. Defendant does not dispute that his check sent in payment of the first installment was dishonored by the drawee bank because of insufficient funds in defendant's account. Defendant also concedes that at least the first and second installments owing on the notes are past due and unpaid.
Appellant presents several defenses. First, it is contended plaintiff is without a right of action herein because the indebtedness was canceled either by plaintiff's voluntary repossession of the mortgaged property or plaintiff's acceptance of the return thereof effecting a dation pursuant to LSA-C.C. arts. 2657-2659, inclusive. In this same regard, it is argued that since eight vehicles were involved, plaintiff's rights should be deemed canceled at least as to those whose return was accepted by plaintiff. Defendant's exception was tried separately from the merits and overruled on the finding that defendant failed to establish either the voluntary repossession or the confection of a dation in settlement of the account. On the merits, appellant maintains the agreement should be abrogated because the trailers were defective and unfit for the purpose which the vendor knew they were intended.
The evidence discloses that defendant, who was engaged in the trucking business, desired to obtain a contract for the hauling of wood chips and sawdust for an enterprise located at Ponchatoula, Louisiana. Defendant contacted plaintiff's sales representative, Anthony Heyd, who was informed as to the nature of business defendant contemplated. Heyd and defendant visually inspected trailers which plaintiff *90 had on its premises, from which assortment an initial four or five trailers were selected for transfer to defendant. The remaining trailers were apparently chosen later by Heyd or some other representative of Fruehauf. In any event, eight trailers were delivered to and accepted by defendant.
Heyd's uncontradicted testimony is to the effect that defendant explained that defendant contemplated starting a new type of hauling and had limited funds available for purchasing equipment. It was necessary, therefore, to limit defendant's selections to an approximate price range of $800.00 per unit. With this vital factor in mind, trailers which were "readable", and which fell in the above mentioned price range were selected. Heyd also testified that defendant was aware that some repairs would have to be made to the units.
Defendant testified that when his first installment became delinquent, he was contacted by either Rosselli or Heyd about the matter. Later, when two or three installments were in arrears, Heyd called and told defendant that if he returned the trailers and paid all delinquent installments, Heyd would cancel the contract and relieve defendant of all further liability. Appellant also stated that no time limit was placed on either the return of the units or the making of the required payments. Appellant further testified that he returned five or six of the trailers which were all that could be transported.
Heyd's testimony is that when defendant became two or three installments delinquent, he contacted defendant and offered to suggest to his Fruehauf superiors that the agreement be canceled if the trailers were returned and the account paid up to date. Heyd explained that he knew defendant was in a financial bind and desired to intercede in defendant's behalf. He also explained that he had no authority to compromise the debt and that he could not even submit any offer of settlement to his superiors until and unless the account was made current. Heyd further testified that he told defendant the matter would have to be consummated within a week or so. According to Heyd, his offer was made in either late March or early April, 1969. Heyd stated that at no time did defendant offer to pay the delinquent payments. He acknowledged, however, that six trailers were returned to plaintiff's premises. In addition, Heyd testified that at no time did he advise defendant the account was considered paid. The record reflects that suit was instituted herein May 29, 1969.
Appellant urges his exception of no right of action on authority of Shreveport Auto Finance Corporation v. Harrington, La.App., 113 So.2d 476, and the provisions of LSA-R.S. 13:4105 et seq. LSA-R.S. 13:4106 states in essence that a creditor who sells mortgaged property without benefit of appraisement forfeits the right to obtain a deficiency judgment against the debtor in the event the sale proceeds do not fully liquidate the debt.
We find Harrington, above, inapplicable to the case at hand. In that case the defendant purchased an automobile from Saxon Auto Sales by making a small down payment and executing a note for the balance. Defendant could not meet his obligation and advised Saxon that he wished to surrender the vehicle and be relieved of the remaining debt. Saxon agreed to defendant's proposal on condition that defendant give a note for $300.00 in compensation for loss of market value of the automobile. The note was transferred to plaintiff who sued thereon. Plaintiff's claim was properly rejected on the ground that the stringent public policy evidenced by LSA-R.S. 13:4106, above, absolutely prohibits a mortgage creditor from obtaining a deficiency judgment against a debtor where the creditor provokes a judicial or private sale of mortgaged property without benefit of appraisement. In Harrington there was mutual agreement between the vendor and vendee which in effect amounted to a sale without appraisal.
*91 No such agreement has been shown in the case at bar. Heyd, as representative of Fruehauf, merely agreed to submit a proposal to his superiors. This was never done because appellant failed to meet the terms imposed by Heyd as conditions precedent to submission of the offer. In this regard it is undisputed that appellant failed to pay the two installments that were in arrears and also failed to return all of the trailers. Since Heyd imposed a time limit of approximately one week with regard to the matter, appellant may not unilaterally extend the term by contending the matter is still open.
A dation en paiement requires the consent of the parties and is complete upon delivery of the thing. LSA-C.C. arts. 2655, 2656; Mack Trucks, Inc. v. Magee, La.App., 141 So.2d 85. Appellant's claim that a dation was effected must likewise be rejected because of his failure to establish mutual consent of the parties to the proposed agreement.
Appellant's apparent contention that a debtor may discharge an obligation by unilaterally surrendering mortgaged property to the vendor merits no discussion other than that it is utterly without foundation in law.
The contention that each trailer represents a separate transaction and that the agreement should be rescinded, at least as to those delivered to plaintiff's premises, is also without foundation. All eight trailers were sold in a single transaction and mortgaged in a single instrument. Heyd's proposal was that he would submit the entire matter to his superiors when his conditions were met. They were not met. There was no agreement as to any trailer whatsoever.
On the merits, defendant maintains he lost his hauling contract because the trailers were defective. He explained that from the outset he was plagued with blowouts because the tires were worn and defective. He also related that on two units the suspension systems broke down necessitating repairs costing approximately $400.00 in each instance. He also testified the sides of the trailers were not strong enough to stand the loads placed in them and "bulged out." He was of the view that the trailers in general were too light for chip hauling. Defendant acknowledged that he continued using the trailers until advised that his hauling contract would be terminated. Defendant offered no corroboration of the alleged defects other than his own testimony.
Plaintiff's representative, Albert Rosselli, testified the trailers were originally designed for persons desiring a covered van for hauling freight or groceries or any other type of merchandise needing protection from the weather. He also stated that used vans of this type had been successfully employed in the chip hauling business and defendant's was the first complaint that trailers of this nature could not be successfully used in such an undertaking. He further noted that every trailer was designed to haul a certain weight and that overloading could have been the cause of the failures experienced by defendant.
Defendant does not deny that he inspected the majority of trailers before accepting their delivery. The condition of the tires should have been easily noted. It is shown that defendant was embarking upon a new venture about which he knew very little. However, his prior experience in a different aspect of the hauling industry charges him with some knowledge of the load capacity of various trailer types. That the sides of the trailers bulged and suspension systems broke down, strongly suggests overloading of these particular units. Considering these circumstances, and the fact that defendant knew the units were in need of some repair, we find that defendant has failed to establish by a preponderance of evidence that the trailers were unfit for the purpose intended.
The judgment of the trial court is affirmed at appellant's cost.
Affirmed.