SAMUEL, Judge.
Plaintiff, a federal credit union now in involuntary liquidation, filed this suit on a promissory note given by the defendant as consideration for a loan. The note is dated April 2, 1970, payable in installments to the plaintiff, or order, in the original amount of $1,383.01, with interest on unpaid balances at the rate of 1% per month, and provides for attorney’s fees in the amount of 20% of principal and interest due in- the event payment is not made at maturity. The petition prays for judgment in the amount of $743.56, the alleged balance due with interest from September 2, 1971 and attorney’s fees as stated in the *462 note. Defendant’s answer admits plaintiff was the holder and owner of the note for valuable consideration but denies the indebtedness and avers the same has been paid.
After trial there was judgment in favor of the defendant, dismissing plaintiff’s suit at its cost. In his reasons for judgment the trial judge stated the evidence indicated $35 a week had been deducted from the defendant’s wages and paid to the plaintiff from the date of the note to June 6, 1971, thus giving the defendant a total credit of $2,100 which was more than sufficient to pay the indebtedness in full. Plaintiff has appealed.
Under our codal and jurisprudential law the extinction of an obligation by payment is an affirmative defense and a party asserting such a defense bears the burden of proving the same.[1] As plaintiff in the instant case has offered sufficient proof, through its books and records and the testimony of its liquidating agent, to establish a prima facie case, and as the defendant has raised no defense except payment, the sole question presented on appeal is whether the defendant has carried his burden of proving payment.
The only evidence offered by the defendant relative to such proof was his own unsupported and sometimes vague testimony. In substance he merely stated that since the date of the note until the termination of his employment by the Jackson Brewing Company on June 1, 1971, $35 had been taken out of his salary each week to be applied to the loan. However, he admitted the following: He had done business with the plaintiff for 22 years during which time he was never without an outstanding loan due; on frequent occasions he had renewed an older loan for the purpose of obtaining additional cash and on other frequent occasions he had withdrawn various amounts, ranging from $100 to $150, from his “Shares” ledger account[2] with the plaintiff; and in addition to the loan represented by the note in suit, he had an outstanding second loan with the plaintiff.
Shortly after the liquidating agent began his work he mailed letters to the credit union members asking them to verify their accounts as shown by the union’s books and records. Such a letter was sent to the defendant stating that his account balances consisted of $154.70 in shares and two loans of $1,046.35 and $3,584.07. The letter, which confirmed those balances as correct, was returned to the agent signed by the defendant. Defendant testified he signed the letter prior to the time the figures were inserted but the testimony of the agent is to the contrary and we know of no reason why the agent would have sent the letter without the figures.
We note the defendant offered no evidence to show the claimed weekly $35 payroll deductions had not been applied, at least in part, to the larger loan he owed plaintiff rather than to the smaller one in suit. Nor did he offer any evidence showing or tending to show in what particular manner or instances plaintiff’s books and records were incorrect. Of greater importance is the fact that he offered no evidence, other than his own inconclusive testimony, relative to the actual amount of deductions made from his wages, a matter apparently simply provable by his employer’s payroll records. In addition, while the records offered by plaintiff do show numerous $35 weekly payments, they also show all such payments were applied to defendant’s “shares” or savings account from which, as has been mentioned, defendant *463 made frequent withdrawals. Those records further show some monthly payments of $50 credited to the loan, payments which are in accordance with the terms of the note.
Under these circumstances we are of the opinion the defendant has failed to carry his burden of proving his affirmative defense of payment.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment in favor of the plaintiff, Jax Federal Credit Union, and against the defendant, Anthony P. Montelaro, in the full sum of $743.56, with interest thereon at the rate of 1% per month from September 2, 1971 until paid, and an attorney’s fee of 20% of said principal and interest; all costs in both courts to be paid by the defendant.
Reversed.

. LSA-C.C.P. Art. 1005 and Comment (b) thereunder; Preferred Investment Corporation v. Denson, La.App., 251 So.2d 455; Bradford v. Griffin, La.App., 193 So.2d 862; Mack Trucks, Inc. v. Magee, La.App., 141 So.2d 85; General Contract Purchase Corp. v. Rumby, La.App., 66 So.2d 375.

. Evidence in the record explains and defines “Shares” as the amount of savings a member of the credit union had in his account.