CURRAULT, Judge.
This appeal arises from two adverse judgments rendered against defenda'nts-appel-lants, Marion and Annette Perret; one on a promissory note, and the other dismissing their reconventional demand with prejudice.
Hibernia National Bank, through its vice-president of the international branch, Quay W. Parrott, loaned the Perrets a total of Three Hundred Fifteen Thousand Dollars ($315,000), evidenced by a series of five promissory notes. The loans were made on behalf of Mari-Anne Stables, a sole proprietorship of the Perrets. Commencing on July 2, 1979, the funds were to be used for the operation of a horse farm in the state of New York. Interest on the notes was set at 1 percent above Hibernia’s prime rate, and two life insurance policies were provided as collateral. The notes were due to mature on March 15, 1980. At that time, the notes were unpaid and in default, apparently due to the forcible detention of Mr. Perret in Saudi Arabia for reasons unconnected to this action. This circumstance was known to Hibernia since Mr. Perret had been detained from January to March, 1980, and Mrs. Perret sought a letter of credit from Hibernia to effectuate Mr. Perret’s release from that country. The negotiations for the letter of credit were unsuccessful, however, and Mr. Perret eventually found his way back to the United States by other means.
In the meantime, on or about March 17, 1980, Mrs. Perret requested an extension of time from Hibernia to pay the defaulted loans. Before an agreement was reached, Mr. Perret returned and became involved in negotiations for a restructuring of the obligations of the Mari-Anne Stables notes, as well as a debt relative to another corporation owned by the Perrets.
On or about May 30, 1980, a meeting was held between Mr. Parrott, the bank official with whom the Perrets had an on-going banking relationship, and Mr. Perret. A new note for Three Hundred Fifteen Thousand Dollars ($315,000) was executed which was the aggregate of the five prior Mari-Anne Stables notes. Mrs. Perret signed at some short time subsequent to the meeting.
At that meeting, Mr. Parrott and Mr. Perret were also attempting to restructure the obligation. A letter of agreement presented to Mr. Perret in this regard was unsatisfactory to him; however, the offensive portions were stricken, initialled by both parties and the document was then signed.
*606 On June 2 or 3, 1980, Mr. Parrott, unbeknownst to the Perrets, left the employ of Hibernia and for some reason a new revised letter of agreement was never prepared by his successor.
Following the failure of the Perrets to pay principal or interest, on October 27, 1980, Hibernia instituted suit on the unpaid note. At this time the note indicated a maturity date of August 15, 1980, and was backdated to April 30, 1980. The Perrets answered with a general denial, but subsequently amended to include the affirmative defense of material alteration of the promissory note due to the backdating of the note. The Perrets also included in its original answer a reconventional demand for damages incurred as a result of Hibernia’s failure to provide a letter of credit for the release of Mr. Perret from Saudi Arabia. Following a denial of a motion for summary judgment by Hibernia, the Perrets filed a motion to continue or to separate the principal claim from the reconventional demand; which motion was also denied.
On the date of trial, March 31, 1981, the Perrets moved to withdraw the reconven-tional demand without prejudice. The trial court accepted the dismissal, but deferred ruling on whether to dismiss with or without prejudice until the conclusion of the case. At conclusion, the trial judge in open court and in judgment dated that day, found in favor of Hibernia on the principal claim on the unpaid note. Decision on whether the dismissal of the reconventional demand would be with or without prejudice was deferred for submission of memorandum by the parties. Finally, on May 12, 1981, the trial court rendered a judgment dismissing the reconventional demand with prejudice.
The Perrets consequently perfected this appeal of both judgments.
ISSUES ON APPEAL
I. Whether or not the court erred in not finding a material alteration of the note.
II. Whether or not Hibernia National Bank was equitably estopped from enforcing said note.
III.Whether or not the trial judge erred in dismissing the counter-claim “with prejudice.”
Appellants allege that at the time the aggregated note was signed on May 30, 1980, the note was incomplete in that the signing of the note was left blank, as was the date the note was to mature. They assert that the placement of the dates on the note by Hibernia constitute a material alteration since this was done without their authorization.
Section 3-115 of the Louisiana Commercial Code (La.R.S. 10:3-115) provides as follows with respect to the enforcement of incomplete instruments:
“Section 3-115 Incomplete Instruments
(1) When a paper whose contents at the time of signing show that it is intended to become an instrument is signed while still incomplete in any necessary respect it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed
(2) If the completion is unauthorized, the rules as to material alteration apply, even though the paper was not delivered by the maker or drawer; but the burden of establishing that any completion is unauthorized is on the party so asserting. (Emphasis added)”
Where a note is completed in a manner not authorized by the issuer, the rules as to material alteration apply. The rules as to material alteration are set forth in Section 3-407 of the Commercial Code as follows:
“Section 3-407. Alteration
(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in
(a) the number or relations of the parties; or
(b) an incomplete instrument, by completing it otherwise than as authorized; or
(c) the writing as signed, by adding to it or by removing any part of it.
*607 (2) As against any person other than a subsequent holder in due course
(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from the defense;”
Under Subsection (2) to have the effect of discharging a party to the instrument, an alteration must be both fraudulent and material.
Was the note complete when signed in all respects, or was its completion authorized by the Perrets?
Both Mr. and Mrs. Perret testified at the trial of this matter. Each of them testified that when they signed the note neither the date of April 30, 1980, nor the maturity date of August 15, 1980 appeared on the note. They further contended that the note was not intended to be finalized pending a resolution of the letter of agreement setting out the terms of security and repayment. Mr. Perret testified that he believed that the note would be dated when an acceptable draft of the May 30 proposal letter was submitted by Hibernia. The authority to date and add a maturity date was to be contained in the final letter agreement. Mr. Parrott, the bank official, testified that he was present when Mr. Perret signed the note, and that he was probably present when Mrs. Perret signed it also, and that it was he who completed the issue date and the maturity date in his own handwriting. He further testified that the maturity date of August 15,1980 had already been inserted by him in the note when it was signed by the Perrets.
Mr. Parrott was less certain as to when the issue date of April 30,1980 was inserted in the note. However, on examination by the court, he testified that both he and the Perrets understood that the note would be backdated to whatever date interest had been paid on the notes in order to allow the Perrets some leeway in their cash flow. The record reveals several letters sent by Hibernia to the Perrets with tentative suggestions for security and repayment schedules, which were incorporated into the letter agreement draft. It is notable that all of the complained of portions were stricken and initialled by the parties and the draft signed. The maturity date was part of that document. The document shows the true intent of the parties as to the restructuring as well as the maturity date. However, the only evidence as to the issue date was by conflicting testimony.
The trial judge apparently placed greater weight on the testimony of Mr. Parrott, and ultimately concluded that the note was either complete when signed or that its completion in this manner was entirely authorized by them. This is a finding of fact by the trial judge which should not be disturbed on appeal without a showing of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). A review of the record does not indicate that the trial judge was clearly wrong on its factual findings; therefore, this allegation is without merit and thus appellant’s claim of material alteration is likewise meritless since the note was completed with the authority of the Perrets.
Appellants’ second argument urges that this court apply the doctrine of equitable estoppel to Hibernia’s claim. This issue, however, is not properly before the court since appellants raise the defense for the first time on appeal. Article 1005 of the Louisiana Code of Civil Procedure includes estoppel as an affirmative defense which must be specifically pleaded in the answer. A review of the answer, the supplemental and amended answer and the transcript, shows that the defense of estoppel was neither pleaded nor were the pleadings properly enlarged. Consistently and repetitively throughout the course of the trial, counsel for Hibernia entered objections and continuing objections to the introduction of any testimony or evidence outside the scope of the defendant’s pleadings. As stated by the First Circuit Court of Appeals in the case of Young v. Warner, 283 So.2d 547 (1973):
“While ... an appellate court may render any judgment which is just and proper on the record, it is well settled that a *608 defense not pleaded in the trial court may not be raised for the first time on appeal. (Id. at page 550, citations omitted)”
Accordingly, this court finds the defense of estoppel to be without merit.
The third and final issue presented for our consideration involves the dismissal of appellants’ reconventional demand with prejudice.
Article 1671 of the Louisiana Code of Civil Procedure states:
“Art. 1671. Voluntary dismissal
A judgment dismissing an action without prejudice shall be rendered upon application of the plaintiff and upon his payment of all costs, if the application is made prior to a general appearance by the defendant. If the application is made after a. general appearance, the court may refuse to grant the judgment of dismissal except with prejudice.”
Source: New; cf. C.P. Arts. 491, 492; R.S. 13:4201
Official Comment (b) under this article explains that the plaintiffs’ right to dismiss after an appearance by the defendant rests within the sound discretion of the trial court. However, the concluding provisions of this paragraph states:
“However, if it appears plaintiff will not be able to substantiate his claim, a judgment of absolute dismissal must be rendered.” (Emphasis added)
The reconventional demand herein arises out of an alleged breach of a contractual obligation to issue a letter of credit for Mr. Perret’s release from Saudi Arabia, and is thus subject to liberative prescription of ten years under Louisiana Civil Code Article 3544.
Appellants, while recognizing that dismissal with or without prejudice is discretionary after the plaintiff has made a general appearance, argue that a dismissal with prejudice will prejudice the substantive rights of the plaintiff-in-reconvention, while a dismissal without prejudice would neither deprive Hibernia of a just defense or violate their substantive rights. Citing: Melancon v. Swift Agricultural Chemical Corp., 289 So.2d 578 (La.App. 3d Cir.1974); City of New Orleans v. New Orleans Canal, Inc., 173 So.2d 43 (La.App. 4th Cir.1965); Betz v. Hearin Tank Lines, 75 So.2d 356 (La.App. 1st Cir.1954).
In arguing for a dismissal without prejudice, appellants rely on two claims. First, it is argued that the Perrets should not be prejudiced because their inability to present evidence to support the reconventional demand at the present time is beyond their control, in particular the unavailability of documents and key out-of-state and/or country witnesses. Second, it is argued that no harm will come to Hibernia in the event of a dismissal without prejudice in that whatever discovery Hibernia National Bank has done with regard to the demand may be utilized in the defense of any subsequent action on the issue, should such an action be brought. Additionally, the Per-rets claim that Hibernia National Bank had not subpoenaed any witnesses other than those who actually appeared and testified at the trial of the matter as tried subsequent to the dismissal of the counterclaim, nor did it intend to, according to counsel a week before trial. They further allege that if a new suit were brought in this, or any other forum on the matters alleged in the reconventional demand, Hibernia National Bank would have all of the rights, both procedural and substantive, which any defendant has in any lawsuit as originally filed. Thus, they conclude that the trial court would not have abused its discretion if it granted a dismissal without prejudice because Hibernia would not have been deprived of just defense. See Betz v. Hearin Tank Lines, supra. By dismissing this action with prejudice, however, the right of plaintiffs-in-reconvention to assert their substantial contract action against this defendant has been irrevocably foreclosed.
Appellee disputes both arguments, claiming as to the first that the Perrets had over one year to prepare and document their claim from the time Mr. Perret returned from Saudi Arabia until the time of the trial. They assert that it was their choice not to pursue this matter until they are *609 faced with Hibernia’s suit on their promissory note. Furthermore, they argue that the Perrets’ star witnesses were already present and ready at time of trial and that their own business records were available to document the damages they suffered. More to the point, however, they refer the court to a letter written by Mrs. Perret to the bank subsequent to their refusal to provide the letter of credit, which indicates gratitude and understanding of the bank’s actions.
In addition, Hibernia disagrees that it will not be substantially prejudiced in defending this claim should it hereafter be asserted. As noted above, a liberative prescriptive period of ten years would be applicable to this contract claim. Hibernia’s primary witness to defend this claim would be Mr. Quay W. Parrott, the banking officer who represented Hibernia at the time the complained of transactions occurred. Since Mr. Parrott is no longer employed by Hibernia, Hibernia fears that in the distant future he may not be available for purposes of offering testimony necessary to Hibernia in its defense of this claim.
In order to determine whether the trial court abused its discretion in this matter, this court must discover whether the plaintiffs-in-reconvention presented sufficient evidence to substantiate the claim, thereby entitling them to a dismissal without prejudice.
The evidence this court is presented with include extensive memoranda prepared by both counsels, opposing affidavits and a letter withdrawing the request for the letter of credit written by Mrs. Perret. The Perrets allege that the bank obligated itself prior to the withdrawal letter, and its failure to do so caused them to suffer damages. The bank officer, Mr. Parrott, testified that Hibernia at no time obligated itself to provide the letter of credit, but that the actions taken were pursuant to negotiations only.
The trial court was presented with all of the foregoing; had, as well, access to a deposition by Mr. Perret not available to this court; and heard the matter on two separate occasions — one on a hearing on a motion for summary judgment, and the other at trial. In our opinion, a review of the record does not indicate that the trial judge abused his discretion in dismissing the action with prejudice. Therefore, we find this allegation to be without merit.
Accordingly, for the foregoing reasons, the judgment of the trial court enforcing the promissory note is hereby affirmed. Additionally, the judgment dismissing appellant’s reconventional demand is also affirmed, with appellant to bear the costs of this appeal.
AFFIRMED.