COLE, Judge.
This is a suit by the lessor of a fifty-ton crane against the sublessee of the crane for damages caused to the crane by the subles-see’s employee. At issue is whether or not the trial court erred in holding that the lessor’s claim had been compromised due to repairs to the crane which were effected by the sublessee and which were allegedly accepted by the sublessor, when compromise was not set forth as an affirmative defense in the sublessee’s answer.
*300 On June 22, 1976, R.T.L. Corporation leased to Baton Rouge Equipment Rentals, Inc. a fifty-ton Grove hydraulic crane, with the understanding that the crane would be subleased to Payne & Keller of Louisiana, Inc. for use on their jobsite at Georgia-Pacific’s Port Hudson plant. R.T.L. had also leased the crane from one of its sister corporations, American Gulf Enterprises, Inc., which had the crane on a lease-purchase consignment at the time. However, the trial court treated R.T.L. as owner of the crane and since no issue of ownership was raised in the trial court or on appeal, we accept as fact this tacit understanding.
The crane was delivered to the Payne & Keller jobsite by an R.T.L. employee on June 22, 1976. On July 26, 1976, the crane tipped over and was damaged while being operated by a Payne & Keller employee. Payne & Keller contacted James Treece, the president of Baton Rouge Equipment Rentals, who inspected the damage and had an estimate prepared. Treece ordered the necessary parts and supervised the repair work, which was done by Payne & Keller employees. Following this repair work, the crane was put back in service and used by Payne & Keller until January 7, 1977, when the crane was picked up by employees of R.T.L. At the time the crane was picked up, an R.T.L. employee noted some damage to the boom of the crane on a check-out list which was signed by a Payne & Keller official. The crane was then returned to R.T.L. where it allegedly remained idle for three or four months. The full extent of the damage allegedly was not discovered until R.T.L. checked the crane prior to leasing it again and found hydraulic leaks. R.T.L. then called in a representative from Gleason Crane Company of Chicago, the selling dealer, who discovered that sections of the boom were bent. The Gleason representative estimated the costs of the repairs to be $42,324.26. R.T.L. made these repairs at its own expense. R.T.L. then contacted Payne & Keller and its insurer, who refused to pay for any repairs beyond those already accepted by Baton Rouge Equipment Rentals. R.T.L. thereafter filed a claim with its insurer, Aetna, who paid $36,324.26, the full amount of the claim, less a $6,000.00 deductible. R.T.L. then granted Aetna a conventional subrogation to the extent of Aet-na’s payment.
Prior to Aetna’s payment, R.T.L. had filed suit against Payne & Keller, Baton Rouge Equipment Rentals, and Aetna. By virtue of the subsequent subrogation agreement, R.T.L. became a nominal plaintiff for the sum of $36,324.26 (the real party at interest being Aetna), its actual loss being the $6,000.00 deductible portion.[1] Additionally, the owners of R.T.L. bought Baton Rouge Equipment Rentals from James Treece. Thus, when this suit went to trial, it involved a claim by R.T.L. and Aetna against Payne & Keller.
After trial, the court rendered judgment in favor of Payne & Keller on the grounds that there was no contract between R.T.L. and Payne & Keller and that any tort claim R.T.L. and Aetna had was settled by Baton Rouge Equipment Rentals’ acceptance of Payne & Keller’s repairs. R.T.L. has appealed, alleging the trial court erred in finding the alleged acceptance of repairs by Baton Rouge Equipment Rentals’ representative constituted a settlement of all tort claims which R.T.L. and Aetna might have for damage to the crane.
Plaintiff first contends the trial court erred in even considering the settlement between Payne & Keller and Baton Rouge Equipment Rentals as a defense, since compromise or the extinguishment of an obligation in any manner is an affirmative defense which must be pleaded specifically. La.Code Civ.P. art. 1005. Payne & Keller filed a general denial which did not assert the affirmative defense of compromise. It admits its principal defense was that the crane was damaged after its return to R.T.L. However, Payne & Keller contends *301 its answer was automatically amended pursuant to La.Code Civ.P. art. 1154 when evidence supporting the defense was received into evidence without objection. Payne & Keller refers to testimony of Leonard Stan-dige, a former Payne & Keller general superintendent and assistant project manager who now works for R.T.L., as establishing the affirmative defense. Mr. Standige testified he called Mr. Treeee at Baton Rouge Equipment Rentals following the accident. He testified Mr. Treeee examined the damages, ordered certain new parts, supervised the repairs, and then accepted the repairs. His testimony also concerned the extent of the repairs.
La.Code Civ.P. art. 1154 reads as follows:
“When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.”
In Wallace v. Hanover Insurance Company of New York, 164 So.2d 111 (La.App. 1st Cir.1964), writ refused, 246 La. 598, 165 So.2d 486 (1964), this Court set forth the requirements for an automatic amendment of the pleadings under article 1154. At page 118 of the opinion it is stated:
“In order for 1154 to work, an automatic amendment of the pleadings, it is necessary that the evidence not be pertinent to any other issue raised by the pleadings in the case, and thus it would have been excluded if objected to timely. If the evidence is admissible for any purpose it cannot enlarge the pleadings except by express consent of the opposing party. (See comment B, Article 1154 and cases cited therein.)”
See DLJ of Louisiana No. 1 v. Green Thumb, Inc., 376 So.2d 121, 122, n. 9 (La. 1979); Independent, Inc. v. Watson, 394 So.2d 710 (La.App. 3d Cir.1981).
The testimony of Mr. Standige concerning the repairs by Payne & Keller and the alleged acceptance thereof by Mr. Treeee was not objected to by plaintiff’s counsel. However, we cannot say the failure to object to this testimony can be tantamount to an implied consent to litigate the affirmative defense of compromise, since this testimony was also admissible to prove defendant’s main defense that the crane was damaged after its return to R.T.L.[2] Since the evidence was relevant for a purpose other than proving a compromise, the pleadings could have been expanded only with the express consent of plaintiff. There being no express consent, the trial court erred in considering this defense.[3]
The other defense asserted by defendant was that the crane was damaged after its return to R.T.L. However, Thomas Bates, an R.T.L. employee, and Ronald Carmouche, one of the owners of R.T.L., both testified that as far as they knew, the *302 crane had not been used after its return from Payne & Keller until they repaired it. Though this testimony was contradicted somewhat by other testimony to the effect the crane had been leased out after its return to R.T.L. and before the repairs were made, there was no evidence presented to show the crane had been damaged during this period. The preponderance of the evidence establishes the damages which were repaired by R.T.L. were the result of the Payne & Keller accident. These repairs included the replacement of the inner-mid and outer-mid boom sections, which were bent in an upward direction. Such damage was consistent with the Payne & Keller accident, in which the crane tipped over while the boom was fully extended. Payne & Keller had repaired the base section of the boom and had replaced the fly section of the boom, but had not disassembled the entire boom which would have been necessary to discover damage to the middle sections. There was even evidence of this damage when the R.T.L. employees picked up the crane, since the boom would not retract in a level position.
We thus conclude the trial court erred in dismissing plaintiff’s case. However, we need not remand the case since the record is complete as to both the liability of defendant and the amount of damages due to plaintiff. La.Code Civ.P. art. 2164. The damage to the crane resulted from the fault of Payne & Keller’s employee who was operating the crane while in the course and scope of his employment. The record also reflects the actual cost to R.T.L. to have the damage repaired was $42,324.26.
For the above reasons, we reverse the judgment of the trial court and render judgment in favor of plaintiff, R.T.L. Corporation, and against the defendant, Payne & Keller of Louisiana, Inc., of Forty-Two Thousand Three Hundred Twenty-Four and 26/ioo ($42,324.26) Dollars, plus legal interest thereon from the date of judicial demand, until paid. Defendant is to pay all costs.
REVERSED AND RENDERED.

. The subrogation agreement, entitled “Receipt and Release,” was filed in evidence as Exhibit P-4, and provided Aetna could pursue its sub-rogated claim either in its own name or in the name of R.T.L. As reflected by pleadings and the trial transcript, it chose to do so in the name of R.T.L.

. The pre-trial order filed in the record and signed by counsel recites the contested facts as: “The extent of the damages, if any, suffered by the crane, and whether the damages actually repaired by R.T.L. Corporation after return of the crane were actually a result of the accident on the Payne & Keller jobsite.”

. Because of our holding that the defense of compromise was erroneously considered by the trial court, we find it unnecessary to consider appellant’s argument that Baton Rouge Equipment Rentals had no authority to settle any claim on behalf of R.T.L. We do note, however, Payne & Keller agrees that Baton Rouge Equipment Rentals was not acting as R.T.L.’s agent. (Payne & Keller’s brief, page 4.)