LANIER, Judge.
This is a suit on a promissory note seeking to recover an unpaid balance of $18,-000, interest thereon at 14% per annum and an attorney fee of 25% of the principal and interest due. The defendant-maker of the note answered asserting the affirmative defenses of novation and dation en paiement. La.C.C.P. art. 1005. After a trial, the district court rendered judgment in favor of the plaintiff for $18,000, with interest at 14% from March 23,1979, and 25% of the principal and interest as an attorney fee. The court granted a credit of $9,000 against the amount due, effective August 2, 1981. This appeal followed. Plaintiff answered the appeal, challenging the credit awarded.
FACTS
Alfred Spain[1] was in the construction business which he operated through his privately owned corporation, Aleo Construction Company of B.R. (Aleo). On May 5, 1978, Aleo purchased five lots in the Wedgewood Subdivision (Lots 332, 335, 345, 355 and 406). This purchase was financed through American Bank & Trust Company (American Bank). To secure the loan, Aleo executed a collateral mortgage note and granted a mortgage on the five lots. Spain personally endorsed the collateral mortgage note. Aleo began construction of residential homes on three lots— Lots 332, 345 (acquired in the above purchase) and 29 (previously acquired). The construction costs on Lots 332 and 345 were also financed through American Bank. Aleo executed a note and a construction mortgage on each individual lot in favor of American Bank to secure the loan.[2] Before the houses were completed, Aleo ran out of loan money and needed additional financing of $18,000 to finish.
Mrs. Patricia Dunaway was the exclusive real estate sales and listing agent for Aleo, and she was aware of Alco’s financial dilemma. On March 23,1979, Mrs. Dunaway arranged a luncheon meeting between Mr. and Mrs. Spain, herself and her husband, C.W. Dunaway. The parties discussed Spain’s financial difficulties, and Dunaway agreed to lend Spain $18,000 to complete the houses. It was contemplated that the houses would be completed and sold within ninety days, and Dunaway would be repaid out of the proceeds (profits)[3] from the sale of each house.
Later that day, Spain went over to Duna-way’s office and signed a promissory note (Spain note) payable to Dunaway for $18,-000 with interest at a rate of “14 or 2% over what Mr. Dunaway has to pay percent per annum from date received until paid.” Spain never made any payments of principal or interest on this note.
One week later, on March 30, 1979, Aleo executed ah $18,000 promissory note (Aleo note) with interest at 10% and a mortgage over three lots (Lots 29, 345 and 332) in favor of the Dunaways. The Aleo note was not personally endorsed by Spain. Dunaway testified that this was done at the request of Spain to provide him with additional security on his loan to Spain. Spain did not request and Dunaway did not relinquish the Spain note upon execution of the Aleo note.
*774 Using the $18,000 loaned to him by Dun-away, Spain finally completed the three houses. On November 29, 1979, Aleo sold Lot 29. The Dunaways executed a partial release of their mortgage so the sale could be passed. However, with American Bank holding a first mortgage in excess of the sale price, Dunaway did not receive any proceeds to be applied on the Spain note. On October 31, 1980, Lot 332 was sold. The Dunaways executed another release to allow the sale to be passed. Again, no proceeds were received because the first mortgage held by American Bank was greater than the sale price. On July 15, 1981, Lot 345 was sold. Again, the Duna-ways executed a release but did not receive any proceeds from the sale because the amount of the American Bank mortgage exceeded the sale price.
On August 12, 1981, the final lot (Lot 335) owned by Aleo was sold to Dunaway for $13,000. American Bank held a collateral mortgage on the lot which had a balance of $20,583.40. Dunaway paid the $13,000 to American Bank, leaving a balance of $7,583.40. The bank released its mortgage on the lot. American Bank sent a $7,583.40 ninety day renewal note to be executed by Aleo and personally endorsed by Spain and his son, Alfred, Jr.
Dunaway made several verbal demands for payment of the Spain note. On January 14, 1981, Dunaway wrote Spain requesting payment. Nothing was ever paid on the Spain note. Dunaway filed this suit on September 23, 1981.
NOVATION
Appellants contend that the trial court erred in finding the $18,000 promissory note executed on March 30, 1979, by Aleo did not constitute a novation which extinguished the $18,000 Spain note.
The trial judge gave the following oral reasons for judgment in finding no novation had been effected:
Anyway, the deal was established over lunch for eighteen grand. Mr. Spain signed a personal note for that amount, binding, money was transferred by check and he went on and developed and finished those homes. On Mr. Dunaway’s testimony, and really that’s all we have on it, is that, uh, Mr. Spain wanted to give him some additional security, that’s what it amounted to, went in within a week — and maybe that was at the instigation of Ms. Dunaway again, probably so, maybe she felt, uh, since she was closer to the situation and the construction than her husband was she felt that additional security was needed. But clearly, in the opinion of this court, there was no — Mr. Spain didn’t intend a novation from the circumstances I’ve heard. He intended, because he had been helped, to give additional security to the situation, otherwise he would have gotten his note back, in my opinion. Of course, Mr. Nevils argued that if it wasn’t his intention he could have gotten him to sign, endorse the new corporate note, that’s true too. But I feel, after hearing both sides, that Mr. Spain intended to be personally bound along with that corporation. From the kind of man he was that seems clear to me, that he didn’t intend to give less security but more security out of gratitude for, uh, being able to proceed.
In Pike Burden Printing, Inc. v. Pike Burden, Inc., 396 So.2d 361, 365-366 (La.App. 1st Cir.1981), the law governing novation is set forth as follows:
The pertinent provisions of the Louisiana Civil Code dealing with novation under the facts of this case are Articles 2185, 2189(2), 2190, 2191 and 2192. These Articles provide:
‘Art. 2185. Novation is a contract, consisting of two stipulations: one to extinguish an existing obligation, the other to substitute a new one in its place.
‘Art. 2189. Novation takes place in three ways:

‘2. When a new debtor is substituted to the old one, who is discharged by the creditor.
*775 ‘Art. 2190. Novation can be made only by persons capable of contracting; it is not presumed; the intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt.
‘Art. 2191. Novation by the substitution of a new debtor may take place without the concurrence of the former debtor.
‘Art. 2192. The delegation, by which a debtor gives to the creditor another debtor who obliges himself towards such creditor, does not operate a novation, unless the creditor has expressly declared that he intends to discharge his debtor who has made the delegation.’ [4]
Although the code articles state that novation is not presumed to occur and that a creditor must expressly declare his intent to discharge his debtor, our courts have held that a debtor may be discharged where the intent of the creditor to novate is clearly indicated. Isaacs v. Van Hoose, 171 La. 676, 131 So. 845 (1930); Strunk Chain Saws, Inc. v. C.W. Williams, 111 So.2d 195 (La.App. 2nd Cir.1959). Novation may also occur where the intent of the parties, the character of the transaction, the facts and circumstances surrounding the transaction and the terms of the agreement itself reveal a desire to effect a novation. Placid Oil Company v. Taylor, 325 So.2d 313 (La.App. 3rd Cir.1975), writ refused 329 So.2d 455 (La.1976); Crescent Cigarette Vending Corporation v. Toca, 271 So.2d 53 (La.App. 4th Cir.1972); Smith, Howard and McCoy, Inc. v. Acme General Contractors, Inc., 152 So.2d 596 (La.App. 2nd Cir.1963), cert. denied, 244 La. 663, 153 So.2d 881 (1963); but see Louisiana Materials Company v. Turcich, 256 So.2d 719 (La.App. 4th Cir.1972); Harepour v. A.C. Collins Ford of New Orleans, Inc., 363 So.2d 1261 (La.App. 4th Cir.1978).
Even if a creditor does not expressly declare in a written act that his original debtor is to be released, a novation may nonetheless be found if all the circumstances surrounding the transaction show that a novation was clearly intended by the creditor. The burden of proving novation, however, falls on the party who seeks its protection. This is so because a novation results in the discharge of a debtor, and the court will not presume that a creditor in the course of his business affairs released a debtor. Art. 2190. Creditors are not in the business of releasing debtors who have not paid. A debtor must present convincing proof to show that his creditor has voluntarily released him from his obligation.
The district court found as a fact that the appellants failed to prove Duna-way intended to voluntarily release Spain from his personal obligation. Had the parties intended for Spain’s personal obligation to be extinguished, language to show this intention could have been inserted in the Aleo note and mortgage. Further, had that been the intention of the parties, Spain could have requested the return of the Spain note. Neither of these things occurred. To the contrary, Dunaway testified he loaned the $18,000 to Spain personally and Spain called his wife and offered to give additional security for the loan. The district court apparently accepted this testimony as credible. Finally, all demands by Dunaway for payment of the Spain note were made to Spain, not Aleo. Considering all of these circumstances, the trial court was not clearly wrong in finding as a fact no novation took place.[5] Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
*776 This assignment of error is without merit.
DATION EN PAIEMENT
Appellants contend the trial court erred in finding the transfer of Lot 335 from Aleo to Dunaway was not a dation en paiement (giving in payment) which extinguished the Spain and Aleo notes.
The trial judge stated the following in his oral reasons for judgment:
[T]he bottom line on the evidence I’ve heard I don’t think that final transaction was a cancellation of that debt or given in payment in toto for that debt. Clearly, more would have been done.
La.C.C. art. 2655 defines a dation en paiement as follows:
The giving in payment is an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due.
Such an act is subject to all the rules which govern ordinary contracts of sale, except the title to the property is not transferred until delivery is made. La.C.C. arts. 2656 and 2659; Mack Trucks, Inc. v. Magee, 141 So.2d 85 (La.App. 1st Cir.1962). A dation en paiement requires the consent of the parties and is complete upon delivery of the thing. Fruehauf Trailer Division, Fruehauf Corp. v. Toups, 243 So.2d 88 (La.App. 1st Cir.1970); Mack Trucks, Inc. v. Magee, 141 So.2d at 87. Once the dation en paiement is completed, the obligation is extinguished, the same as if the full amount had been paid with cash. Taylor v. Taylor, 208 La. 1053, 24 So.2d 74 (1945); Succession of Burns, 199 La. 1081, 7 So.2d 359 (1942). The burden of proving the defense of dation en paiement is on the party claiming it. Mack Trucks, Inc. v. Magee, 141 So.2d at 87.
In the instant case, the transfer of Lot 335 was accomplished through an act of sale dated August 12, 1981. The recited consideration was $13,000 cash. Keith Col-vin, the notary on the sale, testified that no cash consideration was transferred at the closing. However, the evidence establishes that Dunaway assumed a $13,000 obligation on a promissory note owed by Aleo (and personally endorsed by Spain) to American Bank.
Appellants claim, in addition to Duna-way’s assumption of Alco’s $13,000 debt to American Bank, the parties intended for Lot 335 to be transferred to Dunaway to effect a dation en paiement, as payment in full of Spain’s obligation to Dunaway. In support of this defense, Mrs. Spain testified it was her understanding Lot 335 was being transferred to Dunaway in settlement of the $18,000 debt owed him by Spain. Howard Kindling, an expert real estate appraiser, testified the fair market value of Lot 335 was $22,000. Thus, appellants argue the excess value ($9,000) acquired by Dunaway over the $13,000 purchase price and obligation he assumed on Lot 335 was accepted in full payment of the debt owed by Spain.
Dunaway testified that Mr. Rebelle, an employee of American Bank who handled Spain’s banking accounts, contacted him about purchasing Lot 335 in order for American Bank to close out Spain’s portfolio. Hé was asked to assume a $13,000 note on Lot 335 so that the sale of Lot 345 could be passed. Dunaway felt that Lot 335 was worth at least $13,000 and he did not want to hold up the sale of Lot 345, therefore he assumed the $13,000 note, executed a new note in his name and acquired the lot from Spain about one week later. Dunaway listed the lot for sale with Mrs. Dunaway for $25,000. However, Mrs. Dunaway has never received a written offer for purchase of the lot and has received only one verbal offer of $15,000. The lot has not been sold. Mrs. Dunaway substantiated Dunaway’s testimony that Mr. Re-belle suggest he purchase Lot 335 for the $13,000 mortgage.
The record shows the Spain note was not marked cancelled or returned to Spain.
Mr. Rebelle testified that Lots 335 and 345 were not connected in any way by mortgage to American Bank and nothing had to be done with Lot 335 for the sale of Lot 345 to be passed. He never discussed *777 the purchase of Lot 335 with Dunaway as a requirement for the sale of Lot 345, and he never told Dunaway the lot could be purchased for $13,000. Rebelle assumed Spain wanted to sell the lot for less than was owed on it, so he (American Bank) released the mortgage.
The district court found as a fact that the appellants failed to prove the defense of dation en paiement. After reviewing the evidence, we cannot say this factual finding is clearly wrong.
This assignment of error is without merit.
CREDIT OF $9,000
Although the trial judge found no dation en paiement had occurred through the transfer of Lot 335, he awarded appellants a $9,000 credit for the following reasons:
But the record speaks for itself, that transfer was of benefit to the creditor, the evidence is of record that that piece of property at the time, unrebutted, was worth twenty-two thousand and he got it for thirteen — he got it for thirteen thousand, he paid a mortgage off, he got credit for that, he paid thirteen thousand dollars for, in the opinion of the court, a twenty-two thousand dollar lot. And a credit for that difference is due, in the opinion of this court, from the date of that sale toward the application of the indebtedness under the eighteen thousand dollar note and the court will sign judgment in accordance with those — with these oral reasons.
By this ruling, the trial judge apparently attempted to fashion an equitable result.
The district court found as a fact no dation en paiement was intended by this transfer. No defenses, such as lesion or fraud, have been raised by appellants to challenge the validity of this transfer. The act of sale on its face shows a valid sale of Lot 335 for a consideration of $13,000 cash. Although Spain may have transferred Lot 335 for less than its estimated value, we have been cited no law which authorizes a court to award an additional amount on the purchase price of a sale when the validity of the sale has not been contested.
Accordingly, we reverse the trial court’s award of the $9,000 credit to appellants.
USURIOUS INTEREST
Appellants contend for the first time on appeal that the Spain note has a usurious rate of interest which requires forfeiture of the entire interest on the note. La.C.C. art. 2924; La.R.S. 9:3501. As such, appellants claim that the trial court erred in awarding Dunaway interest of 14% on the Spain note.
Usury is an affirmative defense to an action on a note, the burden of proof of which rests upon the party claiming it. Smith v. Ducote, 398 So.2d 190 (La.App. 3rd Cir.1981), writ denied, 405 So.2d 531 (La.1981); Preferred Investment Corporation v. Denson, 251 So.2d 455 (La.App. 1st Cir.1971); All State Credit Plan Jefferson, Inc. v. Daniels, 239 So.2d 470 (La.App. 4th Cir.1970), writ refused, 256 La. 1159, 241 So.2d 256 (1970). Appellants contend the issue of usurious interest, and the effects thereof, were not at issue until the trial court rendered judgment which awarded the usurious interest.
Since usury is an affirmative defense, it must be specifically pleaded in the answer. La.C.C.P. art. 1005. A review of appellants’ answer, supplemental and amended answer, second supplemental and amended answer and the transcript shows the defense of usury was not pleaded. Since appellants raise this defense for the first time on appeal, this issue is not properly before this court. Cf. Gulf Shipping Co. v. McQuilling, 430 So.2d 1322 (La.App. 5th Cir.1983); Hibernia National Bank v. Perret, 427 So.2d 604 (La.App. 5th Cir. 1983); Quachita National Bank in Monroe v. Williamson, 338 So.2d 172 (La.App. 2nd Cir.1976); Young v. Warner, 283 So.2d 547 (La.App. 1st Cir.1973). Because the promissory note showing interest at 14% was pertinent to prove the merits of Duna-way’s claim, its introduction into evidence did not constitute an amendment of the pleadings to conform to the evidence. La. *778 C.C.P. art. 1154; DLJ of Louisiana #1 v. Green Thumb, Inc., 376 So.2d 121 (La.1979); R.T.L. Corporation v. Baton Rouge Equipment Rentals, Inc., 433 So.2d 299 (La.App. 1st Cir.1983); Independent, Inc. v. Watson, 394 So.2d 710 (La.App. 3rd Cir.1981).
This assignment of error is not properly before this court.
DECREE
For the foregoing reasons, the judgment of the district court granting a $9,000 credit is reversed; in all other respects, the judgment is affirmed. Appellants are cast for the cost of this appeal.
REVERSED IN PART; AFFIRMED IN PART.

.Spain died two days after suit was filed. On motion of plaintiff, Spain’s legal successors (Mrs. Alfred Spain, Sr., Alfred Spain, Jr., John Spain and Sally Spain Beleche) were substituted as party defendants. La.C.C.P. art. 802.

. These two notes were also personally endorsed by Spain.

. It was anticipated that a profit of around $5,000-16,000 would be made on each house.

. These articles were amended and reenacted by Acts 1984, No. 331, effective January 1, 1985, and are found at La.C.C. arts. 1879-1887.

. It appears that this transaction was a stipulation pour autri, whereby Spain (original obli-gor) and Aleo (new obligor) agreed to give the Aleo note and mortgage for the benefit of Duna-way (third party obligee) as additional security for the Spain note. As such, the original obli-gor, Spain, was not released from his personal obligation. See, La.C.C. art. 1882 (1985), Comment (c).