## BRADLEY *v.* CLAFLIN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 110. Argued November 14, 1889. — Decided December 9, 1889.

In Louisiana, as in the States in which the English system of equitable jurisprudence prevails, a creditor who has received from his debtor the legal title to real estate, may institute other proceedings against the debtor in relation to the same property, in order to strengthen his title or establish his lien, if he deems it his interest to do so.

In Louisiana a married woman, who has received from her husband a con-

veyance of real estate as a *dation en paiement* of a debt against him arising out of her paraphernal property which came into his control, may cause a mortgage of the same property to secure the same debt to be recorded in the manner provided by law, and the mortgage may become valid if the title under the conveyance fails.

In Louisiana a mortgage or lien on real estate of the husband in favor of the wife is created by Art. 3319 [3287] of the code when the husband receives her dotal or paraphernal property, which mortgage though not registered, is not merged in a simulated and fraudulent title conveyed to her by her husband as a *dation en paiement,* and its registry by the wife makes it valid against creditors of the husband asserting title under liens subsequent thereto.

THE case is stated in the opinion.

*Mr. B. R. Forman* for appellants.

*Mr. W. W. Howe* for appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

Julius Lisso and John H. Scheen constituted a mercantile partnership engaged in business in the town of Coushatta, Louisiana. Horace B. Claflin, Edward E. Eames and others, constituting the firm of H. B. Claflin & Co., of the city of New York, were creditors of Lisso and Scheen, and on the 4th day of December, 1878, they commenced, in the proper state court of Louisiana, a suit with an attachment against Lisso and Scheen and their wives, Clara Forcheimer and Nancy A. Bradley, and others, in accordance with the law and practice of Louisiana. The attachment was levied upon property, real estate mainly, which is the subject of controversy in this case. The suit was afterwards removed into the Circuit Court of the United States. The record of the case in the Circuit Court commences with a bill in chancery filed on the 13th day of November, 1879, in that court, by H. B. Claflin *et al.* against Julius Lisso *et al.* To this suit Lisso and Clara Forcheimer, his wife, and John H. Scheen and Nancy A. Bradley, his wife, are made defendants. This bill, after giving the names of the

persons composing the partnership of plaintiffs, who are citizens of New York, and of the defendants, who are citizens of Louisiana, alleges that the defendants Lisso and Scheen are indebted to the plaintiffs in the sum of $9580.14 on promissory notes, which are described in the bill and on an open account. It then sets out the commencement of the suit and attachment of December 4, 1878, and that certain property was seized under that attachment as the partnership and individual property of Lisso and Scheen, a schedule of which is said to be annexed to the bill. The plaintiffs further allege that by said seizure they have acquired a just and valid lien upon the property seized under the laws of Louisiana. They allege that said Lisso and Scheen obtained the goods sold by complainants to them by false representations as to their solvency made to plaintiffs in New York, and in contemplation of the fraud and insolvency hereinafter set forth. "Among other assets they reported the real estate herein mentioned, which they declared to be and which is justly worth upwards of $20,000."

"That thereafter, and on or about the 23d November, 1878, being entirely insolvent and largely indebted not only to your orators but to others, the said Julius Lisso and John H. Scheen did conspire and collude with their said wives and their said wives with them, to cheat, hinder, delay and defraud your orators, by making a pretended, simulated and fraudulent transfer of all the real estate of the said Lisso and Scheen unto their said wives, respectively, including alike the partnership and individual real property of said Lisso and Scheen in the town of Coushatta and parish of Red River, and also the interest in the telegraph line described in the deeds.

"That said pretended, simulated and fraudulent transfers were made on the 23d day of November, 1878, and recorded in the office of the parish recorder at Coushatta, and were by acts before D. H. Hayes, notary public, and for greater certainty your orators annex hereto and refer to said acts as a part of this bill.

"Now your orators aver that said acts purported to be *dations en paiement*, but they allege and charge that they and each of them was and is illegal, fraudulent, simulated and void,

and worked and still work great injury to your orators; that they were and each of them was made when the transferors were insolvent; that after such transfers the transferors had not property enough left to pay orators' claims; that the said transferees and each of them knew of the insolvency of the said Lisso and Scheen, and was a party to and colluded in said fraud. They further show that the price named in said pretended *dations en paiement* or transfers was wholly inadequate and fraudulent; and they show that even if the said acts or transfers had and have any reality in law they gave and give an unjust and unlawful preference and are null and void; but they expressly aver and charge that the said Lisso and the said Scheen owed their said wives nothing whatever at the time of said pretended transfers, whether on paraphernal account or otherwise.

"And your orators exhibit this their bill as well in aid of the proceedings in said suit No. 8883 as for such discovery and relief as they may be entitled to in the premises."

The prayer of the bill is, that defendants may be required to answer, "and that the said transfers, or *dations en paiement*, passed before D. H. Hayes, notary public, on the 23d November, 1878, may be declared to be simulated, fraudulent, injurious, illegal, null and void, and all the property therein described subjected to the just claims of and debts due your orators as aforesaid, and sold to pay the same; and that the debts due and owing to your orators may be duly liquidated by proper decree as to the said defendants, Lisso and Scheen, as well as to the other defendants."

Other proceedings of a similar character were instituted against the same defendants at about the same time by Henry Bernheim *et al.* Simon August *et al.* and Charles F. Claflin *et al.* Bills identical in their language with those of Claflin & Co. were filed against defendants. They were afterwards, by an agreement of counsel and the order of the court, consolidated and tried together as one cause. In these cases thus consolidated there was, by consent of all the parties in open court, as shown by the record, entered a decree on January 22, 1883. This decree declared—

"That as to the act of conveyance, or *dation en paiement*,

recited in the bills of complaint herein made by the defendant, John H. Scheen, unto the defendant, Nancy A. Bradley, his wife, by act passed before ·D. H. Hayes, notary, parish of Red River, November 23d, 1878, and filed for record and recorded in said parish in conveyance and mortgage books the same day, and whereof a certified copy has been filed as an exhibit herein November 26th, 1879, and is now annexed hereto as part hereof, be, and the same hereby is, in all things revoked, annulled and set aside, and the property therein described and purporting thereby to be conveyed to said Mrs. Nancy A. Bradley, wife of John H. Scheen, declared to have been the property of said John H. Scheen at the time the bills of complaint herein were filed, to wit, November 13th, 1879, and is hereby subjected to the just claims, demands· and judgments of the complainants herein, subject to provisions hereinafter made, which judgments of complainants herein against said Julius Lisso and John H. Scheen *in sólido* are as follows:

" *H. B. Claflin & Co.* v. *Lisso & Scheen*, No. 8883 of the docket of this court, $9580.14, with interest as therein set forth.

" *H. Bernheim & August* v. *Lisso & Scheen*, No. 8880, $655.38, with interest as therein set forth.

" *August, Bernheim & Bauer* v. *Lisso & Scheen*, No. 8881, $2326.36, with interest as therein set forth.

" *Claflin & Thayer* v. *Lisso & Scheen*, No. 8882, $2298.57, with interest as therein set forth.

" And it is further ordered that any mortgage claims which said Mrs. Scheen may have against said property described in said deed of November 23, 1878, be, and the same are hereby, reserved for further decision."

This reservation had reference to a claim by Mrs. Bradley, the wife of Scheen, under a mortgage which she asserted on the property in controversy, filed in the proper parishes where the land in question lay, where they were duly recorded, namely, in the proper office at Bienville, April 30, 1879, and that of the parish of Red River, June 6, 1879. After the consent-decree had been rendered, Mrs. Bradley was permitted

to file an answer and cross-bill against complainants in the original suit, setting up her claim under this mortgage, to which there were a demurrer and answer; also replications. On the 19th of December, 1885, the following agreement was filed, by which the case came on to be heard on the bills, answers, and demurrers:

"Claflin et al. ⎫
     vs. ⎬ Nos. 8896–'9. — Four consolidated causes.
Lisso et al. ⎭

"To save time and expense to both sides, it is agreed that the complainants may withdraw their replication to answer of Mrs. Nancy A Bradley, wife, etc., filed April 26th, 1884, and their answer to said Mrs. Bradley's cross-bill filed, and the said Mrs. Bradley may withdraw her replication to said answer (with rights, however, reserved to both parties to renew said pleadings and reinstate the issues as hereinafter reserved,) and that complainants may file their annexed demurrers and the cause may be set down on the bills, answers and demurrers.

"In case said demurrers are overruled, the answers and replications above mentioned may be renewed and stand restored to the record, and cause proceed on traverse and issues thereby made as if they had not been withdrawn, the object of this agreement being to present in the simplest and least expensive manner the questions raised by said demurrers.

"Dec. 19th, '85.

          "KENNARD, HOWE & PRENTISS,
                    *For Complainants,*
       "W. H. ROGERS,
                    *For Defendants.*"

The decree of the court, rendered on February 6, 1886, declared:

"That the demurrers of the complainants herein to the said cross-bill of the said Mrs. Nancy A. Bradley, wife of John H. Scheen, be, and the same hereby are, sustained, and the said cross-bill dismissed.

"It is further ordered and decreed that the lien privilege

and preference of the complainants herein on the property or its proceeds described in the conveyance thereof, made November 3, 1878, from said John H. Scheen to said Nancy A. Bradley, his wife, by act before D. H. Hayes, notary public for the parish of Red River (which conveyance has been revoked as to the complainants by the decree herein of January 22, 1883, and which property has been subjected to the judgments of the complainants in said decree specially detailed), be, and are hereby, recognized, declared, and made executory, and are adjudged to be in all respects superior and paramount to all and any mortgage, claim or other debt or demand of the said Mrs. Nancy A. Bradley, wife of said John H. Scheen, set up in this cause, and are declared to be a first lien, privilege, and preference on the said property, its proceeds, fruits, revenues, rents, and profits."

It is from this decree that the present appeal by Mrs. Bradley, wife of Scheen, is taken, and all other questions are by the original consent-decree and by the state of the record eliminated from the case, except that which concerns the validity of the mortgage of Mrs. Bradley on account of the paraphernal property which passed to her husband, for which this mortgage was inscribed. It is necessary to add that in the progress of this case the attachments which had been issued and levied on the property in controversy were dissolved, and that an ordinary judgment was rendered personally against Lisso and Scheen for their indebtedness to the parties plaintiff to this suit. It is therefore clear that the plaintiffs derived no aid in establishing their lien upon the property by reason of these attachments, and it seems to be conceded in the argument of counsel that such lien as they may have, commenced with the filing of their bills on the 13th of November, 1879. The object of those bills, it will be observed, was to set aside the conveyance made by Lisso and Scheen to their wives of November 23, 1878, which is said to be a *dation en paiement* under the Louisiana law, that is, a proceeding by which the husband, in this case, conveyed to his wife certain real estate, which she accepted as payment *pro tanto*, to wit, at $10,000, on her debt against him arising out of her paraphernal property that came

into his control; and although the subsequent mortgage instituted by Mrs. Scheen, which it was supposed would cover the property now in controversy, had been recorded in the proper parishes April 30, 1879, and June 6, 1879, which was in one instance seven months and the other nearly six months before the bill of complaint was filed, no reference is made in that bill to this mortgage and no attempt made to have it declared void or set aside, but the plaintiffs were content to take a decree setting aside the first conveyance of November 23, 1878; and it is only by reference to the reservation in the decree that any notice is taken of the mortgage of Mrs. Bradley.

As there is no answer to Mrs. Bradley's cross-bill, and as the case before us rests altogether upon the sufficiency of the allegations of that bill to establish her right under that mortgage, we must look to that alone to determine the question. Mrs. Bradley sets out in very distinct terms that her husband at various times received from her father advancements made to her and from her estate, which are specifically set out and amount to the sum of $29,321.23, for which she claims interest at the rate of five per cent per annum. By the law of Louisiana the assertion of this claim of a wife against a husband and against his property is an *ex parte* proceeding, by which the wife, with certain formalities, makes out an account of the foundation of her claims against her husband, and has it recorded in the proper book of records of the parish or parishes where the lands of her husband lie. Until this is done her claim affects no other person, and this act of recording what is called a mortgage is the initial proceeding by which the claim against her husband's property is made effective. But after it is so recorded all persons are bound to take notice of the existence of the claim as though the husband had himself executed a mortgage to his wife to secure the payment of the debt. What may be set up by creditors of the husband or by purchasers of his real estate to defeat the claim thus instituted, it is not necessary to inquire in this case, because no attack is made upon the justice of the claims of Mrs. Bradley against her husband nor upon the regularity of the proceedings by which this mortgage was instituted. No answer being filed to

the cross-bill, the statements in it are to be taken as true so far as they are pertinent to the question before the court. It is thus admitted by the demurrer to the bill that Scheen had, prior to the 30th day of April, 1879, received of the paraphernal and dotal property of Mrs. Bradley coming through her father the sum alleged in her bill, $29,321.23, for which he was indebted to her, and that she followed the course pointed out by the law in establishing what the statute of Louisiana calls a mortgage on his real estate to secure the payment of that indebtedness. No fraud is alleged by appellees in regard to this transaction. No denial of its truth is made in the record. Some attempt is made in the way of argument to assert the priority of the appellees because their attachment was levied upon the property before a record was made of appellant's mortgage, but with the dissolution of that attachment any lien which could depend upon it fell. In the language of counsel for the appellees in this case, the attachments having been dissolved on technical grounds only, judgment for the money demand was rendered in each case in June, 1880. As these judgments were rendered long after the recording of Mrs. Bradley's mortgage, they could not effect a lien prior to hers, and by the dissolution of the attachments no lien acquired by them could affect her interest at all.

The ground on which the invalidity of this mortgage is asserted by appellees is that at the time Mrs. Bradley had it incribed in the proper book the property was her own, and the title to it was in her by reason of the conveyance made by Scheen to her in payment of his debt to her, which was the subject of the controversy between the parties, and which was set aside in the consent-decree rendered January 22, 1883. It is asserted in argument that, because the title and ownership of that property was in her at the time she inscribed the mortgage now in controversy, she could not in such a proceeding create a valid mortgage on her own property; that at that time Scheen, her husband, against whom the mortgage lien was asserted, had no title or interest in the property, and that therefore the proceeding was of no effect. This proposition is earnestly insisted upon by counsel, and seems to have been the

one on which the Circuit Court rested its decision dismissing Mrs. Bradley's bill. *Claflin* v. *Lisso*, 27 Fed. Rep. 420. We are not referred to any clause of the Code of Louisiana which asserts this principle, nor have we been able to find it in any article or section of that code. It seems to be counsel's inference from the general state of the law concerning mortgages and the title to real estate. Reference is made in the brief of counsel to the case of *Townsend* v. *Miller*, 7 La. Ann. 632, and to the cases of *Miller* v. *Sherry*, 2 Wall. 249, and *Lyon* v. *Robbins*, 46 Illinois, 279, which are also mentioned in the opinion of the judge, who decided the case below, but these cases only concern the effect to be given to a decree rendered in favor of a judgment creditor setting aside a prior conveyance of the debtor as a fraudulent obstruction in the way of the judgment creditor. None of them establish the doctrine contended for in this case, that a person who has received a conveyance of the legal title to real estate from his debtor may not institute other proceedings against that debtor in relation to the same property to strengthen his title or establish his lien, if it is his interest to do so. That this may be done under the English system of equitable jurisprudence is well established, and no reason can be seen either in law or in equity why a party who has received such conveyance, coming to see that his title through it is not perfect, that the conveyance itself may be void or voidable, and that thereby he may lose the debt or consideration of the conveyance, may not institute any proceeding known to the law, and not unjust or inequitable, by which his defective title may be strengthened or his original lien made effectual and established in regard to the property. One of the most common instances of this character, very similar in its nature to the transaction now under consideration, is that of a mortgagee who, by the English common law, was treated as holding the legal title with an equity of redemption in the mortgagor, but who accepts a conveyance of that equity of redemption to himself by the mortgagor as payment of the debt secured by the mortgage. In such case it may happen that the mortgagor has created other liens or encumbrances upon the property between the execution of the mortgage and that

of the deed conveying to the mortgagee the equity of redemption. If this conveyance of the equity of redemption is to be treated as absolute payment of the debt secured by the mortgage, which, as between the mortgagor and mortgagee, it is intended to be, then the mortgage being paid off and discharged, and of no further effect, the parties who have obtained a lien subsequent to that mortgage, but prior to the sale to the mortgagee, would find their lien to be a prior encumbrance upon the property, and superior to the title conveyed by the mortgagor to the mortgagee. To prevent this injustice, equity has established the principle that by holding the possession of his mortgage, and not making any release or satisfaction, he may continue to have the benefit of that mortgage as a lien prior to that of the parties whose rights have intervened, and thus he takes the title, which is intended to be a discharge of that debt as between him and his debtor, while he holds the mortgage itself to be so far alive as to protect him against the subsequent encumbrances on his own land. The analogy of that principle of equitable jurisprudence to the case before us is obvious. In both cases, because equity requires it, the common law doctrine of merger of the two titles does not occur. In favor of the party whose interest would otherwise suffer, they are both kept alive. In this case the mortgage which the law gave Mrs. Bradley on her husband's real estate for her money which came to his hands, though not registered, was not merged in the simulated and fraudulent title conveyed by her husband as *dation en paiement. Forbes* v. *Moffatt,* 18 Ves. 384; *Mulford* v. *Peterson,* 35 N. J. Law (6 Vroom), 127; *Mallory* v. *Hitchcock,* 29 Conn. 127; *Slocum* v. *Catlin,* 22 Vermont, 137; *Wickersham* v. *Reeves,* 1 Iowa, 413.

By the Code of Louisiana, article 3319 [3287]:

"The wife has a legal mortgage on the property of her husband in the following cases:

"1. For the restitution of her dowry, and for the reinvestment of the dotal property sold by her husband, and which she brought in marriage, reckoning from the celebration of the marriage.

" 2. For the restitution or reinvestment of dotal property which came to her after the marriage, either by succession or donation, from the day the succession was opened or the donation perfected.

" 3. For the restitution or reimbursement of her paraphernal property."

We understand this article as declaring the existence of such mortgage or lien from the time when the dotal or paraphernal property of the wife was received by the husband. *Scheen* v. *Chaffe*, 36 La. Ann. 217, 220. Certainly such is the meaning of the article as between the husband and wife. But as to other parties, it is declared by section 3347 that " no mortgage or privilege shall hereafter affect third parties, unless recorded in the parish where the property to be affected is situated ; " and by section 3349, that when the evidence of such legal mortgage existing in favor of a married woman shall not exist in writing, then " a written statement, under oath, made by the married woman, her husband, or any other person having knowledge of all the facts, setting forth the amount due to the wife, and detailing all the facts and circumstances on which her claim is based, shall be recorded."

The appellant in this case having this undisputed right of mortgage for the $29,321.23 set out in her bill, and perceiving that it might be lost either by the fraud of her husband in making the conveyance to her or by some other imperfection, by which it did not transfer to her a clear title to the property mentioned in the conveyance, resorted to her original right of mortgage against the property, which she undertook to make effectual by recording it, as the law required, in the parishes where the real estate lay. She thus, as in the case of the mortgage mentioned in the English equity jurisprudence, reverted to her original right, which was prior to all the conveyances and all the suits about this property set out in this record, and as it was inscribed before any lien accrued to the appellees on that property, or any right to appropriate it to the payment of that debt, it is not perceived why her mortgage does not constitute a prior and superior claim to theirs.

There is found running through the whole of this record an

attempt to control the action of the Circuit Court of the United States in the case by the introduction of proceedings had in the local court of Louisiana, which would have undoubted jurisdiction if it were not for the prior commencement of proceedings in the Circuit Court in the present case. These state court proceedings originated in a surrender by Lisso and Scheen of all their property of whatever description for the benefit of all their creditors, after the proceedings in this case had been commenced, and the appointment by the tenth district court of the parish of Red River of a syndic, namely, Christopher Chaffe, Jr., to take charge of all their assets, convert them into money, and pay it out on the debt of the firm of Lisso & Scheen. In that proceeding, which of course could not oust the Circuit Court of the United States of its jurisdiction to proceed in the present case already before it, Mrs. Bradley filed her claim under the original *dation en paiement* made by Scheen to her, and her mortgage, the same that is in controversy here, asserting the superiority of her claim on the real estate in controversy in this suit against the syndic and the creditors whom he represented. That case, so far as Mrs. Bradley was concerned, followed very much the same course as the present case, and it came twice before the Supreme Court of Louisiana. The first of these cases, that of *Chaffe, Syndic* v. *Scheen,* is reported in volume 34 of the Louisiana Annual Reports, at page 684. The question there had relation to the validity of the same conveyance by Scheen to his wife as a *dation en paiement,* in which the court declared that conveyance to be void in the following language (page 690):

"For these reasons, and after a thorough and prolonged study of the question, and of all the law and the facts bearing on it, we are forced to conclude that this act of giving in payment was null and void and without effect as to the creditors of J. H. Scheen."

But the court in that case declared that whatever other claims Mrs. Scheen may have against her husband, J. H. Scheen, are reserved to her with the right to prosecute them in such mode and manner as the law may provide. Subse-

quently, Mrs. Scheen did prosecute in the District Court of the parish of Red River her claim under the mortgage, which is now the subject of controversy, and that case, which also went to the Supreme Court of Louisiana, and is reported in 36 La. Ann. 217, was decided in her favor as to the validity of the mortgage. The court says: "The greater part of the indebtedness claimed grows out of the husband collecting and using the moneys realized on promissory notes taken on the sales of lands, and alleged, as stated, to have been donated to the plaintiff." The court says further: "The validity of these donations is not questioned by the donor nor his heirs, nor his creditors, and we cannot perceive any right in the creditors of Scheen to raise such objection. It is sufficient that the husband received or collected the funds in question as agent of his wife, and under color of the right claimed by her and recognized by him." "The most serious contest," says the court, "is in regard to the legal mortgage claimed. One of the grounds was that it was not inscribed prior to the 1st of January, 1870." To this the court replies "that the omission to register at that time only deprived the mortgage of force with respect to third persons, who at that date had mortgages or pledges upon the property of the husband that are so far superior to the claims of the wife. So far as relates to the husband and his property, the mortgage in favor of the wife, if there existed one, continued to exist without registry, and if recorded subsequently took effect as to third persons from the date of its registry. The evidence of plaintiff's legal mortgage against her husband was recorded in the parish of Red River in 1879, and its effect upon the immovables in that parish surrendered by the insolvent was properly recognized by the judgment." There was then considered a question as to the registry in the parish of Bienville, which seems not to have been proved, and which was left open for further consideration. Although the direct question of the effect of the prior conveyance of Scheen as a *dation en paiement* is not referred to in this last report, it is obvious that the whole case was a proceeding in the tenth district court of the parish of Red River in regard to the rights of the syndic Chaffe in this property;

and, in the one case, that part of it which related to the *dation en paiement*, the court in the first of these reports declared that conveyance void, but remitted Mrs. Bradley to her rights, if she had any, under the mortgage inscribed April 30th, 1879; and that, when the proceedings to enforce that right came before the same court, it declared the mortgage to be valid for all property within the parish where it was recorded. It must necessarily have considered the effect of the previous conveyance in payment which it had set aside, upon the mortgage it now declared to be valid. It can hardly be believed that if that prior conveyance constituted any lawful obstruction to the right of Mrs. Bradley to record and assert her mortgage, which the court said had existed long prior to any of these proceedings as between her and her husband, and which was made effectual when it was recorded, it would not have been considered and referred to. It is a fair, if not a necessary inference from these two cases, that the counsel engaged in them and the court which decided them did not perceive in the conveyance of Scheen to his wife anything which defeated her right to the mortgage for her dotal or paraphernal property. The question as to the validity of that mortgage after the court had set aside the conveyance as *dation en paiement* was precisely the same as the one in the Circuit Court of the United States, whose decree we are called to revise, and we think we are safe in following the decision of the Supreme Court of Louisiana on the same facts under Louisiana law. The result of these considerations is, that

*The decree of the Circuit Court dismissing Mrs. Bradley's bill is reversed, and the case remanded to that court for further proceedings.*