**HOLLEY EQUIPMENT COMPANY, a corporation, Plaintiff-Appellant,**

v.

**CREDIT ALLIANCE CORPORATION, a corporation, Defendant-Appellee,**

No. 86–7469.

United States Court of Appeals, Eleventh Circuit.

July 20, 1987.

1314 (D.Me.1976), cited at H.R.Rep. No. 464, 95th Cong., 1st Sess. 147, *reprinted in* 1977 U.S. Code Cong. & Ad.News 2191.

Thomas R. Elliott, Jr., London, Yancey, Clark, & Allen, Birmingham, Ala., for plaintiff-appellant.

Alan W. Heldman, Johnston, Barton, Proctor, Swedlaw & Naff, Michael L. Hall, David K. Tinkler, Birmingham, Ala., for defendant-appellee.

Before FAY and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

This appeal challenges an order dismissing a diversity action for lack of subject matter jurisdiction. Holley Equipment Company (hereinafter Holley) brought suit against Credit Alliance Corporation (hereinafter Credit Alliance) seeking compensatory and exemplary damages for breach of contract and fraud. The District Court for the Northern District of Alabama dismissed the action finding the amount in controversy inadequate to confer jurisdiction under 28 U.S.C. § 1332 (1982). In the alternative, the district court granted summary judgment in favor of Credit Alliance. For the reasons that follow, we reverse the district court's dismissal of the action for lack of subject matter jurisdiction and reverse the portion of the district court's order granting summary judgment with respect to Holley's claim for compensatory damages based upon fraudulent misrepresentation.

## BACKGROUND

Holley is an Alabama corporation engaged in sales of construction equipment in Birmingham, Alabama. In April, 1984, one of Holley's customers expressed an interest in buying a crane. On April 19, 1984, Holley's Store Manager, Wayne Hudson, contacted the Birmingham representative of Credit Alliance—a California corporation with its principal place of business in New York. Hudson had been informed of the possibility that Credit Alliance had repos-

sessed a crane that would satisfy the needs of Holley's customer. The representative from Credit Alliance informed Hudson that Credit Alliance was in the process of repossessing a Link Belt LS–318 crane in Louisiana.

According to Hudson, Credit Alliance represented that the repossession was complete except for some "paperwork." According to Credit Alliance, David Chopp, the corporation's Louisiana Branch Manager, informed Hudson that any sale of the crane was expressly conditioned upon the execution and notarization of a *dation en paiement*[1] between Credit Alliance and J & L Riggers—the construction firm from whom the crane was being repossessed.

Holley's prospective customer inspected the crane in late April, 1984.[2] Representatives of Holley and Credit Alliance negotiated a purchase price of $150,000 and scheduled May 2, 1984 as the expected date of delivery. On the morning of May 3, 1984, Chopp contacted Hudson and reported that Credit Alliance had been unable to get the *dation en paiement* notarized. Meanwhile, Holley had already dispatched the trucks to transport the crane from Louisiana to Alabama. When the trucks arrived, the Holley employees were not permitted to load the crane.

The *dation en paiement* was finally notarized on May 15, 1984. After the notarization, Credit Alliance informed Hudson that they were ready, willing and able to deliver the crane. Holley refused to purchase it because Holley alleged that they lost their potential customer. Credit Alliance sold the crane for $145,000 approximately seven months later.

In a complaint filed June 18, 1984, Holley brought suit against Credit Alliance seeking damages for breach of contract and fraud. Credit Alliance denied making any fraudulent representations, denied the existence of a contract and asserted as an affirmative defense the applicable statute of frauds. Credit Alliance filed a motion for summary judgment on May 1, 1985. The district court granted this motion in an order entered August 27, 1985. After considering Holley's motion to set aside this order, the district court dismissed the case for lack of subject matter jurisdiction on June 3, 1986, and in the alternative, granted Credit Alliance's motion for summary judgment dismissing all of the claims. Holley filed a notice of appeal on July 1, 1986.

## DISCUSSION

The district court, on its own motion, analyzed the merits of Holley's claims and determined to a legal certainty that Holley could not recover a sum in excess of $10,000—the amount in controversy necessary to invoke diversity jurisdiction pursuant to 28 U.S.C. § 1332. In order to assess the propriety of this determination, the district court's analysis of each of Holley's claims must be examined and evaluated.

### *Breach of Contract*

Holley alleges that Credit Alliance entered into an agreement to sell the crane for $150,000 and deliver title and possession on May 1, 1984. The terms of this purported contract were not reduced to a writing. Holley contends that as a result

---

1. A *dation en paiement,* of French origin, is a proceeding under Louisiana law whereby a debtor conveys property to his creditor and the creditor accepts the conveyance as payment of the debt. *See Bradley v. Clafin,* 132 U.S. 379, 385, 10 S.Ct. 125, 127, 33 L.Ed. 367 (1889); *Dunaway v. Spain,* 493 So.2d 577, 579 (La.1986); La.Civ.Code Ann. art. 2655. The act of "giving in payment" is similar to an accord and satisfaction as its completion extinguishes the full amount of the debt. *See Dunaway,* 493 So.2d at 579 n. 1. The requirements of a *dation en paiement* include (1) agreement of the res, (2) price, and (3) delivery. *Slaton v. King,* 214 La. 89, 36 So.2d 648, 650 (1948). Mutual consent of the parties is essential. *Dunaway v. Spain,* 468

So.2d 771, 776 (La.Ct.App.1985), *rev'd on other grounds,* 493 So.2d 577 (La.1986). A *dation en paiement* is subject to all of the rules which govern ordinary contracts for sale in Louisiana, except that title does not pass until the res is delivered. *Dunaway,* 468 So.2d at 776; *Mack Trucks, Inc. v. Magee,* 141 So.2d 85, 87 (La.Ct. App.1962).

2. The Crane was in the yard of J & L Riggers. According to Hudson, Credit Alliance characterized the repossession as "friendly" and allowed J & L Riggers to retain possession in order to use the machine for a few days.

of Credit Alliance's breach of the alleged oral agreement, Holley suffered pecuniary damages including $20,000 lost profits which would have been realized had Holley been able to take delivery and resell the crane, and $2,382.29 representing the expenses incurred inspecting the crane and dispatching the trucks to take delivery. The district court found that Holley's breach of contract claims were not recoverable to a legal certainty. After reviewing the record and the applicable law, we agree.

In diversity actions, state law governs substantive issues. *See Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir.1986). Ala.Code § 7–2–201(1) (1984) states in pertinent part "a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of an action or defense unless there is some writing sufficient to indicate that a contract for sale has been made...." It is beyond question that a contract for the sale of a crane qualifies as a contract for the sale of "goods." *See* Ala.Code § 7–2–201(1). Thus, unless one of the three exceptions listed in § 7–2–201(1) exempts Holley's action from the general provisions of § 7–2–201(1), the Alabama Statute of Frauds pertaining to sales of goods renders Holley's claim unenforceable.

Holley contends that § 7–2–201(3)(b) is an applicable exception. We disagree. That section provides that a contract not evidenced by a writing but valid in other respects is enforceable "[i]f the party against whom enforcement is sought *admits in his pleading, testimony* or otherwise in court *that a contract for sale was made*...." Ala.Code § 7–2–201(3)(b) (emphasis added). This exception codifies the general estoppel principle that parties cannot admit to the existence and substance of an oral agreement and then attempt to bar its enforcement due to the lack of a writing. *See Dean v. Myers*, 466 So.2d 952, 955 (Ala.1985); *Conway v. Andrews*, 286

Ala. 28, 236 So.2d 687, 692 (1970); *Campbell v. Campbell*, 371 So.2d 55, 59–60 (Ala. Civ.App.1979). By admitting that a contract for sale was made, a party waives the ability to invoke the statute of frauds. *See e.g., Dean*, 466 So.2d at 955.

■ In this case, Credit Alliance has never admitted, through pleadings or otherwise, that a valid and binding contract was entered into. The averments and assertions by Credit Alliance categorically deny any unconditional assent to the terms of Holley's offer to purchase the crane for $150,000 and take possession on May 2, 1984. Although Credit Alliance admittedly answered inquiries concerning the crane, allowed Holley to inspect it, and negotiated a purchase price applicable in the event that Credit Alliance acquired the right to sell it, these acts are insufficient to constitute an admission.[3] The pleadings and testimony of Credit Alliance representatives clearly indicated that Credit Alliance's offer to sell the crane was expressly conditioned upon the completion of the *dation en paiement* between Credit Alliance and J & L Riggers.

The purpose of a statute of frauds is to "prevent fraud and perjury in actions brought on contracts." *Campbell*, 371 So.2d at 60; *see Dean*, 466 So.2d at 955; *Cox v. Cox*, 292 Ala. 106, 289 So.2d 609, 612 (1974). There is obviously "little danger of fraud or perjury where both parties admit to the substance of the contract." *Campbell*, 371 So.2d at 60. Thus, the judicial admissions exception to the statute of frauds permits enforcement of an unwritten agreement when the existence and the terms of the oral contract are as certain as if they were reduced to a writing. *See Cox*, 289 So.2d at 612. Here, however, there is a complete disagreement concerning the existence of a contract because of a substantial discrepancy in the terms of the alleged agreement. As one court facing a similar situation observed:

*Coin Center, Inc. v. Owen*, 447 N.E.2d 618, 622 (Ind.Ct.App.1983) (inspection of merchandise); *Oakley v. Little*, 49 N.C.App. 650, 272 S.E.2d 370, 374 (1980) (negotiation of price but lack of agreement as to all terms).

---

**3.** Although there are no Alabama cases directly on point, we note that other courts, when faced with similar facts, have ruled that the inspection of the goods and the negotiation of terms does not constitute an admission. *See Woodmar*

[t]o allow [the testimony of the party seeking to enforce the contract] to avert the bar of the statute of frauds would place this Court in the undesirable position of determining which party is correctly stating the agreed upon terms of the sale. The statute of frauds was designed to prevent such a swearing match.

*Allen v. Harris Truck & Trailer Sales, Inc.*, 490 F.Supp. 488, 490 (E.D.Mo.1980).

■ After reviewing the record, we find as a matter of law that Credit Alliance has not admitted facts sufficient to establish an unconditional assent to a contract for sale according to the terms alleged by Holley. "Conditional" admissions are insufficient to vitiate an otherwise valid statute of frauds defense.[4] At best, § 7-2-201(3)(b) would allow Holley to enforce the contract for sale as conditioned on the completion of the *dation en paiement*. Credit Alliance, however, has not breached the contract under these terms. Summary judgment in favor of the defendant based upon the statute of frauds was proper. Using such a conclusion, however, to determine the absence of jurisdiction is error when the ruling is based upon an affirmative defense. We need not discuss this aspect of the case in detail because we find jurisdiction clearly exists based upon the claims of fraudulent misrepresentations.

### Fraudulent Misrepresentation

■ Holley alleges that Credit Alliance willfully, recklessly or mistakenly misrepresented that Credit Alliance repossessed the crane, held legal title, and could deliver possession and title on May 2, 1984. Because of detrimental reliance on these alleged misrepresentations, Holley seeks actual and punitive damages in excess of $10,000. When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, *Bell v. Preferred Life Society*, 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943); *Wood v. Citronelle—Mobile Gathering System Co.*, 409 F.2d 367, 369 (5th Cir.1968),[5] unless it is apparent to a legal certainty that such cannot be recovered. *See Adolph Coors Co. v. Movement Against Racism and Klan*, 777 F.2d 1538, 1544 (11th Cir.1985).

Ala.Code § 6–5–101 (1977) provides: "[m]isrepresentations of a material fact made willfully to deceive or recklessly without knowledge, and acted on by the opposite party, constitutes legal fraud." One who is defrauded has a right of action under Ala. Code § 6–5–100 (1977). If the injured party can show that the opposite party had knowledge of the falsity of the representation, acted with reckless disregard as to its truth, or otherwise intended to deceive or defraud, the injured party is entitled to seek punitive damages. *Mobile Dodge, Inc. v. Alford*, 487 So.2d 866, 871 (Ala.1986); *see Burroughs Corp. v. Hall Affiliates, Inc.*, 423 So.2d 1348, 1354 (Ala.1982); *Ex Parte Smith*, 412 So.2d 1222, 1223 (Ala.1982). If the alleged injury is merely the result of an innocent but mistaken representation, the claimant is only entitled to compensatory damages. *Morgan v. South Central Bell Telephone Co.*, 466 So.2d 107, 113 (Ala.1985).

■ Here, the district court found the record devoid of any evidence of intentional malicious, reckless, or oppressive misrepresentation and concluded that Holley could not recover punitive damages as a legal certainty. After reviewing the record and the applicable law, we agree. The district court's standard for the imposition of punitive damages is consistent with Alabama law. *See Mobile Dodge*, 487 So.2d at 871. We discern no evidence of intent to deceive

---

4. Although there are no Alabama cases directly on point, we note that other courts, when faced with similar facts, have ruled that conditional assents to tentative agreements do not constitute admissions for the purposes of U.C.C. § 2-201(3)(b). *See Allen*, 490 F.Supp. at 489; *Thomas v. Prewitt*, 355 So.2d 657, 661 (Miss.1978); *Lish v. Compton*, 547 P.2d 223, 226 (Utah 1976).

5. The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

or defraud. *See Mobile Dodge,* 487 So.2d at 871.

Regarding compensatory damages, the district court observed that "[t]he proof offered in this case supports an award of only approximately $2,500.00 in actual damages." Relying on this figure, the court determined that Holley could not recover the requisite amount in controversy for any innocent misrepresentation and concluded that the court lacked subject matter jurisdiction. This determination is erroneous because the district court failed to consider a potential recovery for lost profits.

Under Alabama law, a claimant is entitled to recover "all damages which were [within] the contemplation of the parties or which were either necessary or natural and proximate consequences of the fraud." *P & S Business Machines, Inc. v. Olympia U.S.A., Inc.,* 707 F.2d 1321, 1323 (11th Cir. 1983); *see Fidelity & Casualty Co. of New York v. J.D. Pittman Tractor Co.,* 244 Ala. 354, 13 So.2d 669, 672 (1943). Actual damages occasioned by fraud may include lost profits. *See P & S Business Machines,* 707 F.2d at 1324.

■ In this case, Credit Alliance knew or should have known that Holley hoped to gain approximately $20,000 from the subsequent resale. Lost profits must be proven to be recoverable. *See P & S Business Machine,* 707 F.2d at 1324. Nevertheless, if Holley could prove that profits from the potential resale were within the contemplation of the parties or that the loss of expected gains was a necessary or natural and proximate consequence of Credit Alliance's inability to transfer title and possession as allegedly represented, then Holley would arguably be entitled to recover lost profits under Alabama law. *See P & S Business Machines,* 707 F.2d at 1324. Since Holley has clearly stated a claim for actual damages exceeding $10,000, we reverse the order of the district court dismissing Holley's action for lack of subject matter jurisdiction.

As an alternative ruling to the dismissal for lack of subject matter jurisdiction, the district court granted summary judgment in favor of Credit Alliance. Summary judgment may be granted when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As indicated, this court has already determined to a legal certainty that Credit Alliance is entitled to judgment with respect to compensatory damages under Holley's breach of contract action and punitive damages under Holley's claim of fraud. The district court's order granting summary judgment with respect to those claims is therefore affirmed.

Regarding the claim for compensatory damages allegedly caused by innocent misrepresentations, the district court ruled that Holley "cannot prove that the representations concern an existing *material* fact." (emphasis in original). Accordingly, the court found "no evidence to support [Holley's] claims of fraud." With all due respect, we disagree and reverse.

Actionable fraud in Alabama consists of the following elements: "(1) a false representation; (2) concerning a material existing fact; (3) which is relied upon by the plaintiff; and, (4) damage to the plaintiff as a proximate result of the false representation." *Dickinson v. Moore,* 468 So.2d 136, 137–38 (Ala.1985). A "material fact" is a "fact of such a nature as to induce action on the part of the complaining party," *Bank of Red Bay v. King,* 482 So.2d 274, 282 (Ala.1985), and the reliance on the misrepresentation must be reasonable under the circumstances. *See Taylor v. Moorman Manufacturing Co.,* 475 So.2d 1187, 1189 (Ala.1985). The materiality of a fact is generally a question which must be resolved by a jury. *Bank of Red Bay,* 482 So.2d at 282.

■ After reviewing the record in the light most favorable to Holley, we conclude that Credit Alliance has not sustained its burden of proving the absence of genuine issues of material fact regarding the essential elements of Holley's claim for compensatory damages caused by mistaken or innocent misrepresentation. *See Tippens v.*

*Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986). Credit Alliance contends that Holley's version of the facts should be disregarded as a sham because of an apparent inconsistency between the deposition and affidavit of Hudson.[6] In support of this contention, Credit Alliance cites *Vant T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). While we recognize the discrepancies regarding Hudson's testimony, we do not find Hudson's affidavit incredible as a matter of law. *See Tippens*, 805 F.2d at 953. The differences between the deposition and affidavit are not "blatantly inconsistent" and inherently inexplicable, and therefore "create an issue of credibility or go to the weight of the evidence." *Tippens*, 805 F.2d at 953. As this court has observed, "[i]f one or more of the essential elements [of a claim or defense] is in doubt, then summary judgment must not be granted." *Tippens*, 805 F.2d at 952. Accordingly, we reverse the portion of the district court's order granting summary judgment in favor of Credit Alliance with respect to Holley's innocent misrepresentation claim and remand this issue for further proceedings.

## CONCLUSION

In sum, we find the trial court's dismissal of the matter for lack of jurisdiction is erroneous. The alternative rulings expressed by way of summary judgment are affirmed as to the claim of compensatory damages arising from a breach of contract and the claim for punitive damages. The summary judgment dealing with the claim for compensatory damages based upon alleged misrepresentations is reversed.

AFFIRMED in part, REVERSED in part and REMANDED.

---

6. Hudson initially testified during his deposition that he was aware of the *dation en paiement* when negotiations commenced between Holley and Credit Alliance. After Credit Alliance completed its examination of Hudson, Hudson, after conferring with counsel for Holley, "corrected" his testimony and stated that he was told about the *dation en paiement* at a later date. Hudson's affidavit was consistent with his corrected testimony.