In re Pernell B. DRIVER, Debtor.

Pernell B. DRIVER, Plaintiff,

v.

Malvin Gene FORD, a/k/a M.G. Ford, a/k/a d/b/a Malvin Ford Produce, Defendant.

Bankruptcy No. 85–849–BK–J–GP–11.
Adv. No. 86–204.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 20, 1987.

Andrew J. Decker, III, Live Oak, Fla., for plaintiff.

Gerald S. Anderson, LaBelle, Fla., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

Based on documentary evidence and testimony presented at trial on July 30, 1987, the Court makes the following findings of fact and conclusions of law:

### I. FINDINGS OF FACT

1. In 1985, Plaintiff, PERNELL B. DRIVER ("DRIVER"), grew 100 acres of Charleston Gray and 20 acres of Crimson Sweet watermelons in Suwannee County, Florida.

2. During the first week of June, 1985, DRIVER'S crop was ready for harvest with a yield of 30,000 to 40,000 pounds of watermelons per acre. The quality or quantity of DRIVER'S 1985 watermelon crop is not in dispute.

3. In late May, 1985, Defendant, MALVIN GENE FORD ("FORD"), told DRIV-

ER that he was coming to Suwannee County to buy watermelons and would look at the 120–acre field of DRIVER.

4. After examining DRIVER'S watermelon field, FORD agreed to load, transport, and buy a number of watermelons from DRIVER. The exact number of watermelons FORD agreed to buy is the issue in controversy.

5. The agreement of the parties required FORD to provide laborers to harvest and load the watermelons. The preponderance of the evidence showed that although DRIVER would be responsible for payment, the laborers follow FORD from field to field and are under his control and direction. After the laborers finished loading the trucks with watermelons, the trucks would be taken to a scale for weighing. After determining the net weight, FORD would make payment that day or the next day to DRIVER based on the prevailing market price per pound.

6. FORD'S laborers harvested and loaded approximately eight truck-loads of watermelons from DRIVER'S fields. DRIVER was paid for these truck-loads in accordance with the agreement described in the previous paragraph.

7. After the eighth truck-load was loaded and transported, FORD removed the laborers and trucks from DRIVER'S watermelon field and sent the laborers and trucks to another farmer's field.

8. FORD admitted at trial that he told DRIVER he would try to return the laborers and trucks to DRIVER'S field within one week.

9. After FORD failed to return the laborers and trucks to DRIVER'S field within a week, DRIVER contacted another watermelon broker, GENE BROWNING, of Madison, Florida to harvest and load as many acres as possible from DRIVER'S 120–acre watermelon field.

10. Because of commitments BROWNING had made to other watermelon growers, BROWNING was only able to harvest and load approximately 15 truck-loads of watermelons from DRIVER'S field. DRIVER attempted to locate other brokers to harvest and load his watermelons but was unable to locate an available broker.

11. The testimony established that the price paid per pound for watermelons in 1985 averaged between $.03 and $.035 per pound from June 1, 1985, through the July 4, 1985, holiday weekend.

12. The evidence also established that the price paid to laborers for harvesting watermelons averaged between $.01 and $.0125 per pound during the 1985 watermelon crop season.

13. MICHAEL H. SHAW, a watermelon broker from Mayo, Florida, testified that from June 1, 1985, through the July 4, 1985, holiday weekend, there was a market for the resale of watermelons purchased from growers.

14. Based upon the following calculations, DRIVER has estimated his damages to be $57,400.00. First, FORD testified that the yield in DRIVER'S field was approximately 30,000 or 35,000 pounds per acre. DRIVER disputes these figures and estimates that the yield was between 30,000 and 40,000 pounds per acre. Using a yield of 35,000 pounds per acre for the 120 acres of watermelons grown, DRIVER testified that his total 1985 watermelon yield would have been 4,200,000 pounds. The parties agree that a truck-load of watermelons usually weighs about 40,000 pounds. After considering the 8 truck-loads harvested and loaded by FORD and the 15 truck-loads harvested and loaded by GENE BROWNING, DRIVER testified that 3,280,000 pounds of watermelons were left in his 120–acre field. Using a price per pound of $.03 and after deducting the labor expense of $.0125 per pound, DRIVER testified that he suffered damages of $.0175 per pound for the 3,280,000 pounds that were not harvested or damages of $57,400.00.

15. In his pleadings, FORD has denied that he made any agreement with DRIVER. Furthermore, FORD argues that even if he did, the Statute of Frauds provisions contained in § 672.201, Florida Statutes, would bar enforcement of the contract.

## II. CONCLUSIONS OF LAW

1. There is no question that a contract for the sale of watermelons existed between the parties. The question is, to what extent?

2. DRIVER has argued that a "requirements" contract existed between FORD and DRIVER, whereby FORD agreed to purchase all of his watermelons from DRIVER, subject to his resell needs and the amount of watermelons available. In support of this argument, plaintiff has pointed to a portion of a deposition published at trial wherein FORD admitted that he agreed to buy as many watermelons as he could use or resell from DRIVER. Having considered this evidence and having had the opportunity to view the sincerity and demeanor of the defendant at trial, the Court refuses to find that a "requirements" contract was ever contemplated by FORD. Instead, the Court finds that FORD intended to purchase watermelons on a truck-by-truck basis depending upon his resale potential. Further support for this position is gathered from the fact that FORD continued to purchase watermelons from other suppliers rather than making his exclusive purchases from DRIVER.

3. Aside from the argument that there was a "requirements" contract between the parties, DRIVER has also alleged that there was an oral contract between them whereby FORD agreed to purchase DRIVER'S entire watermelon crop. However, § 672.201(1), Florida Statutes, provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for the sale has been made between the parties and signed by the parties against whom enforcement is sought or by his authorized agent or broker." DRIVER has sought to get around this provision by arguing that a contract which is valid in all other respects is enforceable if "the party against whom enforcement is sought admits in his pleading, testimony or otherwise in Court that a contract for sale was made...." § 672.201(3)(b), *Florida Statutes.* This so called "judicial admission"

exception to the Statute of Frauds is designed to prevent a litigant from admitting the existence of a contract while at the same time using the statute as a shield to prevent enforcement of certain terms. As the Eleventh Circuit noted:

> This exception codifies the general estoppel principle that parties cannot admit to the existence and substance of an oral agreement and then attempt to bar its enforcement due to the lack of a writing ... the purpose of a Statute of Frauds is to "prevent fraud and perjuty in actions brought on contracts." [T]here is obviously "little danger of fraud or perjuty where both parties admit to the substance of the contract."

*Holley Equipment Co. v. Credit Alliance Corp.,* 821 F.2d 1531 (11th Cir. 1987).

Plaintiff makes this argument due to the fact that FORD admits the existence of the contract while at the same time disclaiming any further liability based upon the Statute of Frauds. However, this argument fails to recognize that the judicial admissions exception to the Statute of Frauds is itself limited by the extent of goods admitted. Here, there is very little to indicate that FORD intended to purchase any more watermelons than those already purchased. Accordingly, the Court is compelled to find that § 672.201(1), Florida Statutes, is applicable and that FORD is not liable for any damages DRIVER may have suffered due to his inability to sell the watermelons.

4. Having already decided that the defendant is not liable under the terms of the alleged contract, it is unnecessary to decide whether DRIVER acted reasonably in his attempts to sell the watermelons to another buyer. The Court will enter a separate Final Judgment.