WICKER, Judge.
Gloria Cantelli Slay and Sandra Slay Owens appeal a judgment in favor of Valiente Enterprises, Inc., dismissing their claims of wrongful seizure against it. We affirm.
KLO Corporation purchased a True Value Hardware franchise, including fixtures, equipment, supplies, and inventory, from Valiente Enterprises, Inc. on October 1, 1984, for $147,700.00. KLO secured the debt by a mortgage on Slay’s house. Slay was the president of KLO; but she took no active part in the business, which was actually run by her son-in-law, Edward Owens. On the same date KLO leased from Lois and Felino Valiente, the sole shareholders of Valiente Enterprises, the premises where the hardware store was operated.
KLO defaulted on the rent and on the mortgage. Owens tendered the keys to the hardware store at Valiente’s request, and Valiente took over operation of the business. Valiente also moved to seize and sell the mortgaged house, which belonged both to Slay and her daughter, Owen’s wife, in satisfaction of the mortgage. Slay sought unsuccessfully to restrain or enjoin the sale of her house. When that failed, she sought damages from Valiente for wrongful seizure.
The issue, at both the trial of the restraining order and the trial of the wrongful seizure, was whether or not the parties had entered into a dation en paiement, thus extinguishing the debt. The judge ruled that Slay had failed to prove the dation, and Slay and her daughter now appeal this ruling.
The dation is defined as “an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due.” La.C.C. art. 2655. A dation requires the consent of the parties, and the burden of proving such mutual consent in this case is on Slay. Fruehauf Trailer Division, Fruehauf Corp. v. Toups, 243 So.2d 88 (La.App. 1st Cir.1970). See also La.C.C. art. 1831. In some cases, consent can be shown by the actions of the parties. Huval Tractor, Inc. v. Journet, 452 So.2d 373, 376 (La.App. 3rd Cir.1984), writ denied 458 So.2d 120 (La.1984), involved the credit sale of a tractor. The seller/chattel mortgagee “manifested his willingness to receive the tractor by keeping it at the place of business and later selling it to someone else”; and this constituted a dation en paiement, although the creditor did not return the cancelled note.
Felino Valiente testified that KLO was behind on mortgage and lease payments consistently. He began proceedings in 1986 but agreed to dismiss without prejudice when KLO agreed to provide an inventory and catch up on the rent and mortgage. He was present when the inventory *459 was taken in January of 1987 but objected to some of the valuations, feeling them inflated. He later found the store in deplorable condition — dirty and with almost no inventory. He contacted his attorney about initiating proceedings again. There were negotiations in which he offered to take back the store and the house in exchange for forgiveness of the debt and dropping the action. However, no agreement was reached. KLO was in arrears about $40,000.00 in payroll taxes and about $25,000.00 to $30,000.00 to vendors. He agreed to take the store back, with the right to go against the house. He went to pick up the keys on March 16, 1987; and Owens sent his daughter out with them. He had come prepared with a writing:
I am picking up the keys, at your request, for the St. Claude True Value Hardware Store, 5422 St. Claude Avenue, New Orleans, Louisiana 70117.
Be advised that I waive no legal rights or remedies with regard to the original agreement entered into on October 1, 1984 for the sale of St. Claude True Value Hardware store to you.
Owens refused to sign, but Valiente and his witnesses did sign this document. He began operating the store himself the following day, but he found most of the equipment in disrepair and heaped up in a storeroom. Almost all the shelving and fixtures had disappeared. After selling $470.93 worth of KLO inventory, he stored it in a back room and locked it until the sequestration proceedings in Orleans Parish, CDC # 87-7335, could result in an inventory and sale of the remaining inventory. He had to spend about $177,000.00 to replenish the store inventory in the first year after taking it back.
Owens testified that when he gave the keys back, he had no intention to continue to operate the store because Valiente told him if he gave the keys back his mother-in-law could keep her house. He also testified that he didn’t have his employees do anything to artificially inflate the inventory taken in January of 1987.
Michael Moolekamp managed the store both for Valiente and KLO, and he testified he was ordered to increase some of the prices and move defective merchandise from the back room and put it on the shelves for the January 1987 inventory. Some things had been brought from Owens’ home and priced and put on the shelves for the inventory. Most of the floor machines were broken and just put out to have a larger-looking inventory. When Valiente took over, he discovered that empty cans had been filled with water and put out on the shelves for the inventory. He moved KLO’s stuff into a back room after a few days, having sold some of it. Some of it was damaged and never sold.
Ivan Federoff, from the Orleans Parish Sheriff’s Office, testified that he seized and sold the articles in the back room. KLO did not exercise its right to appoint an appraiser; and the appraisal was $25,-000.00 for the inventory and fixtures. Val-iente was the only bidder and bought the whole thing for $16,666.66.
Danny Brown did the January 1987 inventory, and he counted everything salea-ble. He discussed some of the pricing with Valiente, because some of the merchandise was obsolete, damaged or old. Some of it was not priced, and Valiente questioned the prices. He used KLO’s prices, and the majority of the merchandise was pre-marked.
John Schielder did an inventory for Val-iente March 23, 1987, resulting in a value of $74,825.19. He didn’t count the things that weren't saleable, the furniture, or the fixtures.
Richard J. Borja, an employee, testified the amount and quality of inventory was diminished. Gallons of anti-freeze had been filed with water, and dried paint had been put out. Shelves, the forklift, and the rental machines needed repair.
Barry Stephens, employed by Cotter and Company, True-Value Hardware Division, testified that purchases from his corporation started to decline when KLO took over. Their purchases from January 1 through March 17, 1987, were only $1,284.00. However, he didn’t know whether KLO had been buying from anoth *460 er supplier. The store had $130,000.00 in inventory when KLO acquired it and only about $30,000.00 when Valiente got it back. He was there for the March inventory. The store was almost empty of inventory, and what was left was the slow-moving stuff. None of the floor machines appeared functional, and some of the shelves were gone. However, there were both clerks and customers in the store on that day. From March 17 until the end of 1987, Valiente ordered $111,057.00 in merchandise.
The judge concluded that Mrs. Slay had not met her burden of proving a elation en paiement, and we do not believe that conclusion to be manifestly erroneous. “[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review....” Rosell v. Esco, 549 So.2d 840, 844 (La.1989).
We also do not believe there was a legal error in the judge’s apparent conclusion that the circumstances under which Valiente took over the hardware store and began operating it did not imply mutual consent to a dation. The facts of Huval, supra, are different: the buyer gave back the mortgaged property, the tractor, and resold it. There is no indication that the seller got back less than what the buyer owed. Here, testimony supports the conclusion that the hardware store was worth much less when Valiente got it back.
We affirm the judgment in favor of Val-iente Enterprises, Inc. and against Gloria Cantelli Slay and Sandra Slay Owens dismissing their claims of wrongful seizure. Gloria Cantelli Slay and Sandra Slay Owens must pay the costs of this appeal.
AFFIRMED.